## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SHARON GOETZ, on behalf of the Cornerstone Pediatric Profit Sharing Plan and as representative of a class of all other similarly situated individual account retirement plans,<br><br>Plaintiff,<br><br>vs.<br><br>VOYA FINANCIAL, INC. and VOYA RETIREMENT INSURANCE AND ANNUITY COMPANY<br><br>Defendants. | Civil Action No.<br><br>**COMPLAINT – CLASS ACTION**<br><br>JURY TRIAL DEMANDED |

Plaintiff Sharon Goetz brings this action as representative of and on behalf of the Cornerstone Pediatric Profit Sharing Plan (the "Cornerstone Plan") and all other similarly situated individual account plans as defined in 29 U.S.C. § 1002(34) (the "Plans") against Defendants VOYA Financial, Inc. and its wholly owned subsidiary VOYA Retirement Insurance and Annuity Company (collectively "VOYA") for violating and knowingly participating in violations of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and 29 C.F.R. § 2550.404a-5 promulgated thereunder. Plaintiff, on behalf of the Cornerstone Plan and all similarly situated Plans, is seeking the return of the undisclosed excessive and unreasonable asset-based fees charged by VOYA for recordkeeping and administrative services, and to prevent VOYA from charging those excessive fees in the future.

## INTRODUCTION

1.    Plaintiff is a participant in the Cornerstone Plan.  At the end of 2015, the Cornerstone Plan had 19 participants and $2,797,616 in plan assets.

2.      The Cornerstone Plan contracted with VOYA to provide recordkeeping and other services to the Cornerstone Plan. As a result, VOYA is a "party in interest" under 29 U.S.C. § 1102(14)(B). 29 U.S.C. §§ 1106(a) and 1108(b)(2) generally prohibit a "party in interest" from providing services to a qualified retirement plan like the Cornerstone Plan unless the contract or arrangement is reasonable and no more than reasonable compensation is paid by the plan to the party in interest. If a service contract fails to comply with 29 U.S.C. § 1108(b)(2), including the detailed disclosure requirements of 29 CFR 2550.408b-2(c), the contract for services will constitute a prohibited transaction under 29 U.S.C. § 1106(a)(1)(C). Furthermore, if the contract calls for the payment of an unreasonable fee, adequate disclosure of that fee cannot save the arrangement from violating the provisions of 29 U.S.C § 1108(b)(2) and violating the prohibited transaction rules of 29 U.S.C. § 1106(a)(1)(C).

3.      A recent survey by NEPC, an independent investment consulting firm, found that the median recordkeeping cost of 113 plans was $64 per plan participant in 2015.[1] As a result of VOYA's asset-based fees, in 2014 the Cornerstone Plan paid approximately $30,790 for recordkeeping services for a plan that had only 21 participants at the end of the year, amounting to $1,466 per participant. In 2015, recordkeeping fees increased to $34,568 for 19 participants amounting to $1,819 per participant. VOYA's fees are 36 times more than the reasonable amount of compensation that should have been charged to the Cornerstone Plan.

4.      Here, VOYA, as the Cornerstone Plan recordkeeper, charged the Cornerstone Plan an unreasonable asset based fee of between 0.67% and 1.86% of the net assets invested in various mutual funds offered as investment options by the Cornerstone Plan,

---

[1]

https://cdn2.hubspot.net/hubfs/2529352/Blog/2015_10_nepc_2015_defined_contribution_plan_a
nd_fee_survey-_what_a_difference_a_decade_makes_copy1.pdf?t=1495567038751

5.      VOYA then concealed the true amount of its fees from Ms. Goetz and the other

Cornerstone Plan participants by adding VOYA's asset based fees to the operating costs of the

various mutual fund options in the participant fee disclosures required by 29 CFR 2550.404a-5

("Rule 404a-5").  The Rule 404a-5 disclosures prepared and distributed by VOYA increased the

operating costs of every mutual fund offered under the Cornerstone Plan by 0.67% to 1.86% of

net assets, all of which was retained by VOYA to the detriment of the Cornerstone Plan and its

participants.  For example, the Cornerstone Plan Rule 404a-5 disclosures show the net operating

expenses of the Voya Solution Aggressive Portfolio (Advisor Class) mutual fund as 2.54% of

fund assets, whereas the prospectus for that fund filed with the Securities and Exchange

Commission by VOYA shows a net operating expense of 1.39%, a difference of 1.15%.  While

the asset based fee for recordkeeping paid by the Cornerstone Plan and other plans seems

insignificant, the negative financial impact on the efforts by Plaintiff and the other Cornerstone

Plan participants to save for retirement is significant.  In defined contribution plans, employees'

benefits at retirement "are limited to the value of their own individual investment accounts,

which is determined by the market performance of employee and employer contributions, less

expenses." *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1825 (2015).

6.      Because retirement savings in defined contribution plans grow and compound

over the course of the employee participants' careers, poor investment performance and

excessive fees can dramatically reduce the amount of benefits available when the participant is

ready to retire.  Over time, even small differences in fees and performance compound and can

result in vast differences in the amount of savings available at retirement.  As the Supreme Court

has explained, "[e]xpenses, such as management or administrative fees, can sometimes

significantly reduce the value of an account in a defined-contribution plan." *Tibble*, 135 S. Ct. at

1825.

7.      The impact of excessive fees on employees' and retirees' retirement assets is dramatic. The U.S. Department of Labor has noted that a 1% higher level of fees over a 35-year period makes a 28% difference in retirement assets at the end of a participant's career. U.S. Dep't of Labor, A Look at 401(k) Plan Fees, at 1–2 (Aug. 2013).[2]

8.      VOYA holds itself out as a leading provider of retirement products and services in the U.S., serving more than 47,000 institutional clients and nearly 4.5 million individual retirement plan investors.[3] VOYA had $517 billion in total assets under management and administration as of June 30, 2017, of which approximately 34%, or $175,780,000 were retirement plan assets.[4] Based on the asset based fees charged to the Cornerstone Plan, VOYA potentially earns over $1 billion a year in excessive compensation at the expense of the individual plans and their participants.  These excessive fees violate a fundamental principle of ERISA: that no contract for services can charge any more than reasonable compensation in relation to the service being provided.

9.      Although the Cornerstone Plan fiduciaries breached their fiduciary duties to the Cornerstone Plan by entering into the VOYA contract, the U.S. Supreme Court made it clear in *Harris Trust and Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 245 (2000), that 29 U.S.C. § 1132(a)(3) authorizes a civil action against a non-fiduciary who participates in a transaction prohibited by 29 U.S.C. § 1106(a).

10.      To remedy VOYA's violations of ERISA's prohibition against charging unreasonable fees to a qualified plan and its retirement plan investors, Plaintiff, as a

---

[2] Available at https://www.dol.gov/sites/default/files/ebsa/about-ebsa/our-activities/resource-center/publications/401kFeesEmployee.pdf
[3] http://corporate.voya.com/company-overview/company-profile
[4] http://investors.voya.com/

W0032714.3

representative of the Cornerstone Plan and other Plans which contract with VOYA for recordkeeping and other services, brings this action on behalf of the Plans under 29 U.S.C. §1132(a)(3) seeking restoration to the Plans of all losses resulting from the excessive and unreasonable fees charged by VOYA for recordkeeping services under 29 U.S.C. §1108(b).  In addition, Plaintiff seeks such other equitable or remedial relief for the Plans as the Court may deem appropriate.

## JURISDICTION AND VENUE

11.     This Court has exclusive jurisdiction over the subject matter of this action under 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331, because it is an action under 29 U.S.C. §1132(a)(3).

12.     This District is the proper venue for this action under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(b), because VOYA is authorized to do business in Delaware and can be found in this District, and Defendant Voya Financial, Inc. resides in this district.

13.     The Court has specific personal jurisdiction over all VOYA defendants.  VOYA Financial, Inc. resides in this District and VOYA Retirement Insurance and Annuity Company resides within the United States.   Further, the Court has specific personal jurisdiction over all VOYA Defendants because, upon information and belief, they provided services to class members in this district and/or they engaged in the conduct described herein which took place in and/or was specifically directed towards class members in this District.

## THE PARTIES

### Plaintiff Sharon Goetz

14.     Plaintiff Sharon Goetz, is a citizen of Colorado who resides at 15899 West 83rd Place, Arvada, Colorado 80007. Ms. Goetz is a participant in the Cornerstone Plan as defined in 29 U.S.C. §1002(7), and therefore has standing to bring this action on behalf of the Cornerstone

Plan under 29 U.S.C. §1132(a)(3).

### The Cornerstone Pediatric Profit Sharing Plan

15.     The Cornerstone Pediatric Profit Sharing Plan is a defined contribution, individual

account, employee pension benefit plan established and maintained under 29 U.S.C.

§§1002(2)(A) and 1002(34) for the benefit of employees of Cornerstone Pediatric Associates,

Inc., 90 Health Park Drive, Suite 160, Louisville, CO 80027.

16.     The Cornerstone Plan is established and maintained under a written document in

accordance with 29 U.S.C. §1102(a)(1).

17.     Employees of Cornerstone Pediatric Associates, Inc. are eligible to participate in

the Cornerstone Plan. Benefits under the Cornerstone Plan, which are based upon deferrals of

employee compensation, employer matching contributions and performance of investment

options net of fees and expenses.  The Cornerstone Plan is the only employer-provided source of

retirement plan income for employees of Cornerstone Pediatric Associates.

18.     The Cornerstone Plan is one of 47,000 plans for which VOYA performs similar

recordkeeping and other administrative services. The Cornerstone Plan is typical of defined

contribution, individual account plans serviced by VOYA.

### VOYA Defendants

19.     VOYA Financial, Inc. (formerly known as ING U.S., Inc.) is a publicly traded

*Fortune* 500 company (NYSE: VOYA) with $11 billion in revenue in 2016. VOYA Financial,

Inc. is incorporated in Delaware and headquartered at 230 Park Avenue, New York, NY 10169.

20.     VOYA Retirement Insurance and Annuity Company (formerly known as ING

Life Insurance and Annuity Co.) is a wholly owned subsidiary of VOYA Financial, Inc. VOYA

Retirement Insurance and Annuity Company is incorporated in Connecticut with its principal

place of business at One Orange Way, Windsor, CT 06095. VOYA Retirement Insurance and
Annuity Company is registered to do business in Delaware, and serves as the recordkeeper for
the Cornerstone Plan and other similarly situated defined benefit Plans.

## FACTUAL ALLEGATIONS

### Plan Recordkeeping

21.     Recordkeeping is a necessary service for every defined contribution plan.
Recordkeeping for 401(k) plans like the Cornerstone Plan and the proposed class of plans and
their participants is fundamentally the same as keeping records for a brokerage account with a
few additional points of data. It is a system where costs are driven purely by the number of
inputs and the number of transactions. In essence, it is a computer-based bookkeeping system.
The greatest cost incurred in incorporating a new retirement plan into a recordkeeper's system is
for upfront setup costs.

22.     After the Plan account is set up, individual accounts are opened by entering the
participant's name, age, SSN, date of hire and marital status. The system also records the
amount of a participant's compensation he or she wished to contribute each pay period through
automated payroll deductions. Participants can go on line and change their contribution rate at
any time.

23.     Similar to a brokerage account, the system also records and tracks which
investments among the twenty or thirty investment choices available under the plan a participant
has chosen to invest his or her contributions. All of the investment choices available to
participant-directed retirement plans like the Cornerstone Plan and the putative class are chosen
from a list of investment options provided by VOYA and are already connected to VOYA's
system, so that all information required of the investment fund downloads to VOYA's system

automatically.

24.     Participants can buy and sell investments and change their investment instructions for new contributions on-line at any time.  The system also records withdrawals and distributions and keeps a running daily balance of each participant's account by extracting data from other reporting systems, like Morningstar.

25.     Recordkeeping services for a qualified retirement plan, like the Cornerstone Plan, are essentially fixed and largely automated.  The cost of recordkeeping and administrative services depends on the number of participants, not the amount of assets in the participant's account. Thus, the cost of providing recordkeeping services to a participant with an average account balance of $100,000 is the same as the cost of recordkeeping for a participant with $1,000 in her retirement account.  For this reason, responsible recordkeepers charge recordkeeping fees for each plan participant rather than as a percentage of plan assets. Otherwise, as plan assets increase through participant contributions or investment gains, the recordkeeping revenue increases without any change in the services provided.

**VOYA Retirement Program**

26.     VOYA advertises itself as a "leading provider of defined contribution plans." [5] VOYA's website states: "Voya's Retirement business is focused on guiding Americans to greater retirement readiness through employer-sponsored savings plans and holistic retirement and income guidance."  According to the VOYA website, VOYA serves more than 47,000 institutional clients and nearly 4.5 million individual retirement plan investors. VOYA's retirement business contributes 34% of VOYA's total operating earnings.[6]

27.     VOYA offers "comprehensive fiduciary solutions" which consists of "a robust

---

[5] http://foremployers.voya.com/
[6] http://corporate.voya.com/company-overview/company-profile

suite of services to make your job less burdensome and simplify compliance. Depending on your arrangement with VOYA, services may include sponsor communications, plan reporting, compliance testing, IRS audit support, and fiduciary training."

28.     In addition to its financial capability, VOYA markets itself as socially, ethically and economically responsible: "With a clear mission to make a secure financial future possible — one person, one family, one institution at a time — Voya's vision is to be America's Retirement Company®. . . . Voya is equally committed to conducting business in a way that is socially, environmentally, economically and ethically responsible...."[7]

29.     VOYA also markets itself as focused on helping employees achieve their retirement goals: "Voya ... helps Americans plan, invest and protect their savings — to get ready to retire better."[8] "With flexible plan design, industry-leading technology and dedicated support, Voya has everything you need to help your employees be ready for retirement."[9]

30.     Although the VOYA Retirement Offerings website emphasizes ethical conduct and helping employees save for retirement, VOYA's actual business practices benefit only VOYA.

**VOYA's Misleading 29 CFR 2550.404a-5 Disclosures**

31.     Beginning in November 2012, defined contribution plan sponsors were required to make certain disclosures to plan participants under 29 CFR 2550.404a-5 ("Rule 404a-5 Disclosures"). Although plan sponsors are responsible for delivering the Rule 404a-5 Disclosures, they are expected to rely on the services of the plan's recordkeeper to actually prepare and deliver the required disclosures.

---

[7] http://investors.voya.com/
[8] *Id.*
[9]  http://foremployers.voya.com/

32.     As provided in the 29 CFR 2550.404a-5 regulations, the purpose of the Rule 404a-5 Disclosures is to provide sufficient information regarding the plan, including fees and expenses, to participants so that they are able to make informed decisions with regard to the management of their individual plan accounts.

33.     Rule 404a-5 (c)(3) requires "an explanation of any fees and expenses that may be charged against the individual account of a participant or beneficiary on an individual, rather than on a plan-wide, basis … and which are not reflected in the total annual operating expenses of any designated investment alternative."

34.     Rule 404a-5d(1)(iv) requires fee and expense information for designated investment alternatives offered by the plan:

(1)     The amount and a description of each shareholder-type fee (fees charged directly against a participant's or beneficiary's investment, such as commissions, sales loads, sales charges, deferred sales charges, redemption fees, surrender charges, exchange fees, account fees, and purchase fees, which are not included in the total annual operating expenses of any designated investment alternative)…; and

(2)     The total annual operating expenses of the investment expressed as a percentage (i.e., expense ratio), calculated in accordance with paragraph (h)(5) of this section...

35.     Rule404a-5d(h)(5) states: "In the case of a designated investment alternative that is registered under the Investment Company Act of 1940, the annual operating expenses and other asset-based charges before waivers and reimbursements (e.g., investment management fees, distribution fees, service fees, administrative expenses, separate account expenses, mortality and expense risk fees) that reduce the alternative's rate of return, expressed as a percentage calculated in accordance with the required Securities and Exchange Commission form…." Because all of the investment options in the Cornerstone Plan are mutual funds, the applicable form is Form N1-A, Registration Statement Under The Investment Company Act of

W0032714.3

- 10 -

1940, which includes the fund prospectus.[10]

36.     On October 31, 2016, VOYA provided the following Rule 404a-5 disclosures to

the Cornerstone Plan participants disclosing the Cornerstone Plan annual administrative fee:

**Annual General Plan Administrative Fees**

The fee amounts below are deducted from all participant accounts. If more than one
service provider performs services on behalf of the plan, then each provider's fees are
shown separately. Certain fees that apply to the same service may be combined on your
statements.

The "Allocation of Fees" column describes how each fee is allocated among participants.
"Pro-rata" means that participants each pay a portion of a plan-level fee amount based on
their share of plan assets. "Per capita" means all participants pay an equal share of a larger
plan-level fee amount (i.e. plan-level amount is divided by the number of participants).
"Per Participant" means that the same fee amount is assessed against all participants (e.g.
$15/participant, etc.).

| Fee Type | Fee Amount | Allocation of Fees | Entity Charging the Fee |
|---|---|---|---|
| Maintenance Fee | $15.00 | Per Participant | Voya |

* * * *

Some of the plan's administrative expenses were paid from revenue sharing payments of
one or more of the plan's designated investment alternatives.

37.     VOYA's Rule 404a-5 Disclosures also contained the following disclosures

regarding mutual fund operating expenses:

| Name / Type of Option | Total Gross Annual Operating Expenses | | Total Net Annual Operating Expenses | | Shareholder Type Fees/ Fund Restrictions |
|---|---|---|---|---|---|
| | As a % | Per $1,000 | As a % | Per $1,000 | |
| | | | | | |
| **ASSET ALLOCATION** | | | | | |
| Voya Solution Aggressive Prt Adv | 2.80% | $28.00 | 2.54% | $25.40 | |
| Voya Solution Balanced Prt Adv | 2.59% | $25.90 | 2.45% | $24.50 | |
| Voya Solution Conservative Prt Adv | 2.53% | $25.30 | 2.31% | $23.10 | |
| Voya Solution Mod Aggress Prt Adv | 2.58% | $25.80 | 2.53% | $25.30 | |
| Voya Solution Mod Conserv Prt Adv | 2.52% | $25.20 | 2.39% | $23.90 | |

---

[10] https://www.sec.gov/files/formn-1a.pdf

| BALANCED | | | | | |
|---|---|---|---|---|---|
| VY Invesco Eqty & Inc Port I | 2.22% | $22.20 | 2.20% | $22.00 | |
| VY TRowePrice Captl Apprec Pt Srv | 2.19% | $21.90 | 2.19% | $21.90 | |
| **BONDS** | | | | | |
| PIMCO VIT Real Return Portfolio Adm | 2.28% | $22.80 | 2.15% | $21.50 | |
| Pioneer Strategic Income Fund Y | 2.33% | $23.30 | 2.33% | $23.30 | |
| Voya Intermediate Bond Fund A | 1.71% | $17.10 | 1.71% | $17.10 | |
| **GLOBAL / INTERNATIONAL** | | | | | |
| American Funds CapWld G&I R3 | 2.24% | $22.40 | 2.24% | $22.40 | |
| Oppenheimer Developing Markets Fnd A | 2.82% | $28.20 | 2.82% | $28.20 | |
| VY Templeton Foreign Eqty Port I | 2.50% | $25.00 | 2.48% | $24.80 | |
| **LARGE CAP GROWTH** | | | | | |
| Fidelity Adv New Insights Fund I | 2.26% | $22.60 | 2.26% | $22.60 | |
| Voya Large Cap Growth Port Srv | 2.22% | $22.20 | 2.22% | $22.20 | |
| **LARGE CAP VALUE** | | | | | |
| Invesco Diversified Dividend Fnd A | 2.19% | $21.90 | 2.18% | $21.80 | |
| Vanguard VIF - Equity Income Port | 2.16% | $21.60 | 2.16% | $21.60 | |
| Voya Russell Lrg Cap Index Port I | 1.78% | $17.80 | 1.77% | $17.70 | |
| Voya U.S. Stock Index Port Inst | 1.76% | $17.60 | 1.76% | $17.60 | |
| **SMALL/MID/SPECIALTY** | | | | | |
| ClrBrg Mid Cap Fund R | 2.59% | $25.90 | 2.55% | $25.50 | |
| Neuberger Berman Md Cp Grw Fnd R3 | 2.53% | $25.30 | 2.52% | $25.20 | |
| Victory Sycmr Established Value Fd R | 2.31% | $23.10 | 2.31% | $23.10 | |
| Voya SmallCap Opportunities Prt I | 2.24% | $22.40 | 2.24% | $22.40 | |
| VY Clarion Real Estate Port Srv | 2.39% | $23.90 | 2.26% | $22.60 | |
| VY Columbia Sm Cap Val II Pt I | 2.44% | $24.40 | 2.41% | $24.10 | |
| VY JPMorgan Sm Cp Core Eq Prt Srv | 2.41% | $24.10 | 2.41% | $24.10 | |

38.     VOYA's Rule 404a-5 Disclosures were misleading because they failed to disclose VOYA was charging Plaintiff and other Cornerstone Plan participants an asset-based fee that was substantially higher than $15 per participant. VOYA attempted to avoid disclosing its excessive fees by increasing the annual operating cost of every mutual fund investment option available to participants in the Cornerstone Plan and other similarly situated Plans by 0.67% to

1.80%.

39.     The following chart shows the difference between the mutual fund operating

expenses disclosed by VOYA in the 404a-5 Disclosures and the actual operating costs of the

various funds as disclosed in the fund prospectuses:

| Fund | Fund Net Expense Ratio per VOYA Plan Disclosures | Fund Net Expense Ratio per Prospectus | Difference Paid to Voya |
|---|---|---|---|
| Voya Solution Aggressive Prt Adv | 2.54% | 1.39% | 1.15% |
| Voya Solution Balanced Prt Adv | 2.45% | 1.30% | 1.15% |
| Voya Solution Conservative Prt Adv | 2.31% | 1.16% | 1.15% |
| Voya Solution Mod Aggress Prt Adv | 2.53% | 1.38% | 1.15% |
| Voya Solution Mod Conserv Prt Adv | 2.39% | 1.24% | 1.15% |
| Voya Solution Mod Aggress Prt Adv | 2.20% | 0.65% | 1.55% |
| Voya Solution Mod Conserv Prt Adv | 2.19% | 0.89% | 1.34% |
| VY Invesco Eqty & Inc Port I | 2.15% | 0.78% | 1.37% |
| VY TRowePrice Captl Apprec Pt Srv | 2.33% | 0.73% | 1.60% |
| PIMCO VIT Real Return Portfolio Adm | 1.71% | 1.04% | 0.67% |
| Pioneer Strategic Income Fund Y | 2.24% | 1.10% | 1.14% |
| Voya Intermediate Bond Fund A | 2.82% | 1.32% | 1.50% |
| American Funds CapWld G&I R3 | 2.48% | 0.91% | 1.57% |
| Oppenheimer Developing Markets Fnd A | 2.26% | 0.63% | 1.63% |
| VY Templeton Foreign Eqty Port I | 2.22% | 0.92% | 1.30% |
| Fidelity Adv New Insights Fund I | 2.18% | 0.82% | 1.36% |
| Voya Large Cap Growth Port Srv | 2.16% | 0.30% | 1.86% |

| | | | |
|---|---|---|---|
| Invesco Diversified Dividend Fnd A | 1.77% | 0.62% | 1.15% |
| Vanguard VIF - Equity Income Port | 1.76% | 0.27% | 1.49% |
| Voya Russell Lrg Cap Index Port I | 2.55% | 1.45% | 1.10% |
| Voya U.S. Stock Index Port Inst | 2.52% | 1.37% | 1.15% |
| ClrBrg Mid Cap Fund R | 2.31% | 1.11% | 1.20% |
| Neuberger Berman Md Cp Grw Fnd R3 | 2.24% | 0.55% | 1.69% |
| Victory Sycmr Established Value Fd R | 2.26% | 1.14% | 1.12% |
| Voya SmallCap Opportunities Prt I | 2.41% | 1.11% | 1.30% |
| VY Clarion Real Estate Port Srv | 2.41% | 1.11% | 1.30% |
| VY Columbia Sm Cap Val II Pt I | 2.54% | 1.39% | 1.15% |
| VY JPMorgan Sm Cp Core Eq Prt Srv | 2.45% | 1.30% | 1.15% |

40.     The VOYA asset based fee increased the cost of every investment on the VOYA

Retirement Flexible Advantage platform by 0.67% to 1.86%. Nowhere in the Rule 404a-5

Disclosures does VOYA disclose (1) it increased the operating expenses of every mutual fund

offered under the Cornerstone Plan; and (2) the expense difference was paid to VOYA to provide

recordkeeping and administrative services to the Cornerstone Plan. Plan participants could not

have discovered VOYA's increased fees unless they compared every fund operating fee

disclosed in the Rule 404a-5 Disclosure with the fund operating fee disclosed in the fund

prospectus.

41.     The fee discrepancy is most pronounced when applied to the passively managed

index and target date funds. For example, Vanguard charges 0.30% of net assets to manage and

operate the Vanguard VIF - Equity Income Portfolio. VOYA charges Cornerstone Plan

participants an additional 1.49% to track a participant's investment in the Vanguard fund on the

VOYA platform. In other words, Cornerstone Plan participants pay almost 1.5% more annually to invest in the VOYA fund than someone who was not a plan participant would pay to own the same fund.

42.     VOYA even increases the expense ratios of the 12 VOYA proprietary mutual funds offered under the Cornerstone Plan by 1.15% to 1.80%. For example,  VOYA operating expenses of 0.30% of net assets to manage and administer in its Voya Large Cap Growth Portfolio fund.  However, VOYA charges Cornerstone Plan and other Plan participants an additional 1.86% to simply track a participant's investment in the same fund. In other words, Cornerstone Plan participants pay almost 2% more annually to invest in the VOYA fund than someone who was not a plan participant would pay to own the same fund.

43.     Ironically, the Comparative Chart of Investment Options prepared for the Cornerstone Plan participants by VOYA contains the following caution: "The cumulative effect of fees and expenses can substantially reduce the growth of your retirement savings."

**VOYA also Receives Additional Fees Directly from Mutual Fund Sponsors**

44.     In addition to the direct compensation VOYA receives by adding its asset based fees of 0.67% to 1.80% to the operating expense of every mutual fund offered under the Cornerstone Plan, VOYA also receives additional compensation from the sponsors most of the mutual funds offered to Cornerstone Plan participants through distribution and/or service fees known as 12b-1 fees.

45.     So-called "12b-1 fees" are fees paid by a mutual fund out of fund assets to cover distribution expenses and sometimes shareholder service expenses.  These 12b-1 fees get their name from the SEC rule that authorizes a fund to pay them.   "Distribution fees" include fees paid for marketing and selling fund shares, such as compensating brokers and others who

sell fund shares, and paying for advertising, the printing and mailing of prospectuses to new investors, and the printing and mailing of sales literature.

46.     VOYA receives 12b-1 fees from 19 of the 26 funds offered by the Cornerstone Plan, including 10 of the 12 VOYA proprietary funds.  VOYA receives between .0% and 0.50% of the net assets invested in those funds in addition to the fees added to the operating costs of the funds.

47.     The following table sets out the asset based fees, 12b-1 fees and total compensation received by VOYA as a percentage of net assets invested in the funds:

| Fund | VOYA Asset Based Fees | VOYA 12b-1 Fees (per fund prospectus) | Total Fees to Voya |
|---|---|---|---|
| Voya Solution Aggressive Prt Adv | 1.15% | 0.50% | 1.65% |
| Voya Solution Balanced Prt Adv | 1.15% | 0.50% | 1.65% |
| Voya Solution Conservative Prt Adv | 1.15% | 0.50% | 1.65% |
| Voya Solution Mod Aggress Prt Adv | 1.15% | 0.50% | 1.65% |
| Voya Solution Mod Conserv Prt Adv | 1.15% | 0.50% | 1.65% |
| Voya Solution Mod Aggress Prt Adv | 1.55% | 0.00% | 1.55% |
| Voya Solution Mod Conserv Prt Adv | 1.34% | 0.25% | 1.59% |
| VY Invesco Eqty & Inc Port I | 1.37% | 0.15% | 1.52% |
| VY TRowePrice Captl Apprec Pt Srv | 1.60% | 0.00% | 1.60% |
| PIMCO VIT Real Return Portfolio Adm | 0.67% | 0.50% | 1.17% |
| Pioneer Strategic Income Fund Y | 1.14% | 0.50% | 1.64% |
| Voya Intermediate Bond Fund A | 1.50% | 0.25% | 1.75% |
| American Funds CapWld G&I R3 | 1.57% | 0.00% | 1.57% |
| Oppenheimer Developing | 1.63% | 0.00% | 1.63% |

| | | | |
|---|---|---|---|
| Markets Fnd A | | | |
| VY Templeton Foreign Eqty Port I | 1.30% | 0.25% | 1.55% |
| Fidelity Adv New Insights Fund I | 1.36% | 0.25% | 1.61% |
| Voya Large Cap Growth Port Srv | 1.86% | 0.00% | 1.86% |
| Invesco Diversified Dividend Fnd A | 1.15% | 0.25% | 1.40% |
| Vanguard VIF - Equity Income Port | 1.49% | 0.00% | 1.49% |
| Voya Russell Lrg Cap Index Port I | 1.10% | 0.50% | 1.60% |
| Voya U.S. Stock Index Port Inst | 1.15% | 0.50% | 1.65% |
| ClrBrg Mid Cap Fund R | 1.20% | 0.25% | 1.45% |
| Neuberger Berman Md Cp Grw Fnd R3 | 1.69% | 0.00% | 1.69% |
| Victory Sycmr Established Value Fd R | 1.12% | 0.25% | 1.37% |
| Voya SmallCap Opportunities Prt I | 1.30% | 0.25% | 1.55% |
| VY Clarion Real Estate Port Srv | 1.30% | 0.25% | 1.55% |
| VY Columbia Sm Cap Val II Pt I | 1.15% | 0.50% | 1.65% |
| VY JPMorgan Sm Cp Core Eq Prt Srv | 1.15% | 0.50% | 1.65% |

48.    Because VOYA charges asset based fees based on a percent of the value of each participant's account maintained on their platform for recordkeeping services, plan participants pay wildly divergent amounts for the same services. For example,  Plaintiff, with an account value of $48,180 as of September 30, 2016 paid up to 1.86% or $896 annually for recordkeeping services while a participant with an account balance of $4,818 paid $89 for exactly the same services.

49.    If VOYA charged the median fee of $64 for 19 participants, the Cornerstone Plan (and similarly situated Plans) would pay $1,216 per year for recordkeeping services,

rather than $34,568 per year, saving the plan participants over 1% per year. Plaintiff would have paid $64 in fees in 2016 rather than up to $896, a savings of $832.

## ERISA

50.     Under 29 U.S.C. § 1002(21)(a), VOYA is a fiduciary of the Cornerstone Plan and other similarly situated Plans with respect to VOYA's fees and the Rule 404a-5 Disclosures because VOYA has discretionary authority or discretionary responsibility to determine the amount it will add to the various mutual fund operating expenses in the Rule 404a-5 Disclosures to collect its asset based fees.

51.     29 U.S.C. §1104(a)(1) requires that a plan fiduciary "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of ... (ii) defraying reasonable expenses of administering the plan" exercising "the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims."

52.     29 U.S.C. §1106(a)(1)(C) of ERISA prohibits a fiduciary of an employee benefit plan from entering into an agreement with a party in interest for the provision of services to the Plan. Under 29 U.S.C §1002(14)(B) a "party in interest" is defined to include "a person providing services to such plan." VOYA is a "party in interest" because it is providing recordkeeping and other services to the Cornerstone Plan and other similarly situated plans.

53.     29 U.S.C. §1108(b)(2) exempts "Contracting or making reasonable arrangements with a party in interest for office space, or legal, accounting, or other services necessary for the establishment or operation of the plan" from the 29 U.S.C. §1106(a)(1)(C) bar "if no more than reasonable compensation is paid therefor."

54.     As alleged above, the addition of the asset based fees added to the mutual fund operating expenses ensures that VOYA will receive a variable fee for recordkeeping based on a percentage of the total assets held in the Plan, regardless of the number of participants or any other factor that actually affects the cost of providing recordkeeping services.  Thus, VOYA's asset-based fee is not "reasonable compensation" under 29 U.S.C. §1108(b)(2), and so is not exempt from the prohibition of 29 U.S.C. §1106(a)(1)(C).

55.     VOYA holds itself out as an expert on retirement plans, offering fiduciary education and other services. When it offered asset-based recordkeeping services, VOYA knew or should have known that such charges were unreasonable and violated 29 U.S.C. §1108(b)(2), and 29 U.S.C. §1106(a)(1)(C).  Nonetheless, VOYA continued to charge plans asset based fees for recordkeeping services.

56.     Cornerstone Pediatric Associates, LLC, as a fiduciary to the Cornerstone Plan and its participants, failed to adequately perform its fiduciary obligation to (1) ensure that the Cornerstone Plan pay no more than reasonable compensation for recordkeeping services, thereby causing the Cornerstone Plan to engage in a transaction prohibited by 29 U.S.C. § 1106(a)(1)((C); and (2) ensure the Rule 404a-5 Disclosures were accurate. However, Cornerstone Pediatric Associates was not the recipient of the excessive compensation and did not prepare the misleading Rule 404a-5 Disclosures.

57.     29 U.S.C. §1105(a)(2) provides a fiduciary "shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan" (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach.

58.     29 U.S.C. §1132(a)(3) authorizes a plan participant to bring a civil action for "appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." In *Harris Trust and Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 245 (2000), the U.S. Supreme Court made it clear that 29 U.S.C. § 1106(a)(3) authorizes a civil action by a plan participant against a non-fiduciary who participates in a transaction prohibited by 29 U.S.C. § 1106.

## CLASS ACTION ALLEGATIONS

59.     29 U.S.C. §1132(a)(3) authorizes any participant or beneficiary of the Plans to bring an action individually on behalf of the Plans "(B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

60.     Acting in this representative capacity and to enhance the due process protections of the Cornerstone Plan and all similarly situated Plans enrolled for retirement plan services with VOYA, as an alternative to direct individual actions on behalf of the Plans under 29 U.S.C. §1132(a)(3), Plaintiff seeks to certify this action as a class action under Fed. R. Civ. P. 23 on behalf of the Cornerstone Plan and the Plans. Plaintiff seeks to certify, and to be appointed as representative of, the following class:

> The Cornerstone Plan and every other participant-directed individual account plan enrolled for retirement plan services with VOYA for which VOYA provides recordkeeping and other administrative services for an asset-based fee by charging the Plans and participant accounts an amount calculated as a percentage of the value of the participant's account invested in any particular investment fund, at any time from the earlier of (i) September 1, 2014; or (ii), in the event the Court determines that VOYA has concealed the facts and circumstances that would have apprised Plaintiff and the Class of the existence of Voya's excessive compensation, the first date on which VOYA provided sufficient disclosure of its compensation for recordkeeping and administrative services, through the date of judgment (the "Class Period").

61.     This action meets the requirements of Rule 23 and is certifiable as a class action for the following reasons:

a. Per the VOYA website, the Class includes up to 47,000 Plans and 4,500,000 retirement plan participants as members who are enrolled with VOYA to provide retirement plan recordkeeping services and is so large that joinder of all its members is impracticable.

b. There are questions of law and fact common to the Class because the VOYA charged excessive fees to the Plans in violation of 29 U.S.C. §1108(b)(2), provided misleading Rule 404a-5, Disclosures and took the actions and omissions alleged herein as to the Plans. Thus, common questions of law and fact include the following, without limitation: Whether VOYA is a Plan fiduciary with respect to setting and disclosing its fees; whether an asset-based fee calculated as a percentage of a plan's assets constitutes reasonable compensation for recordkeeping services; whether the fiduciaries of the Plans breached their fiduciary duties to the Plans and caused the Plans to engage in prohibited transactions by failing to ensure that the Plans paid no more than reasonable compensation for recordkeeping services; whether the Plans suffered damages or losses from VOYA's excessive fees; whether VOYA and the plan sponsors provided misleading Rule 404a-5 Disclosures; and what Plan-wide equitable and other relief the Court should impose in light of VOYA's wrongful conduct.

c. Plaintiff's claims are typical of the claims of the Class because Plaintiff was a participant in the Cornerstone Plan during the time period at issue in this action and all similar Plans were harmed by VOYA's misconduct.

d. Plaintiff is an adequate representative of the Class and will fairly and

adequately protect the interests of the class because she because she was a participant in the Cornerstone Plan, which is typical of the Plans enrolled with VOYA to provide services for the Plans during the Class period, has no interests that are in conflict with the Class, is committed to the vigorous representation of the Class and has engaged experienced and competent attorneys to represent the Class.

e. Prosecution of separate actions for these violations of ERISA by individual Plan participants and beneficiaries would create the risk of (A) inconsistent or varying adjudications that would establish incompatible standards of conduct for VOYA in respect to the discharge of its duties to the Plans and liability to the Plans under 29 U.S.C. §§ 1104(a)(1); 1105(a)(3); 1106(a)(1)(C); 1108(b)(2); and 29 C.F.R. § 2550.404a-5; and (B) adjudications by individual participants and beneficiaries regarding these breaches of fiduciary duties and remedies for the Plans would, as a practical matter, be dispositive of the interests of the participants and beneficiaries not parties to the adjudication or would substantially impair or impede those participants' and beneficiaries' ability to protect their interests. Therefore, this action should be certified as a class action under Rule 23(b)(1)(A) or (B).

62.     A class action is the superior method for the fair and efficient adjudication of this controversy because joinder of all participant Plans is impracticable, the losses suffered by individual Plans may be small and make it impracticable for individual Plans to enforce their rights through individual actions, and the common questions of law and fact predominate over individual questions. Given the nature of the allegations, no class member has an interest in individually controlling the prosecution of this matter, and Plaintiff is aware of no difficulties likely to be encountered in the management of this matter as a class action. Alternatively,

then, this action may be certified as a class under Rule 23(b)(3) if it is not certified under Rule 23(b)(1)(A) or (B).

63.     Plaintiff's counsel will fairly and adequately represent the interests of the Class and is best able to represent the interests of the Class under Rule 23(g).

## FIRST CLAIM FOR RELIEF

### Breach of Fiduciary Duty Against VOYA Under 29 U.S.C. § 1104(a)(1) – Excessive Fees

64.     The allegations set forth above are incorporated by this reference.

65.     VOYA is a fiduciary of the Cornerstone Plan and other similarly situated Plans under 29 U.S.C. § 1002(21)(a) because VOYA discretionary authority or discretionary responsibility in setting its compensation by determining the amount VOYA would add to the operating expenses of the mutual funds.

66.     VOYA's total asset based fees were excessive and therefore in violation of 29 U.S.C. § 1108(b)(2).

67.     VOYA breached its fiduciary duty under 29 U.S.C. § 1104(a)(1) to the Cornerstone Plan and other Plan participants by charging the Plans excessive fees for recordkeeping.

68.     The Cornerstone Plan and all similarly situated Plans have been damaged by VOYA's actions in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

### Breach of Fiduciary Duty Against VOYA under 29 U.S.C. § 1104(a)(1) – False and Misleading Rule 404a-5 Disclosure

69.     The allegations set forth above are incorporated by this reference.

70.     VOYA is a fiduciary of the Cornerstone Plan and other similarly situated Plans under 29 U.S.C. § 1002(21)(a) because VOYA discretionary authority or discretionary

responsibility in preparing the administrative and fund fee disclosures required by 29 C.F.R. § 2550.404a-5.

71.     VOYA prepared and distributed the 29 C.F.R. § 2550.404a-5 administrative and fund fee disclosures to the Cornerstone Plan and other Plan participants.

72.     The 29 C.F.R. § 2550.404a-5 administrative and fund fee disclosures were materially false and misleading because:

   a.   The Rule 404a-5 Disclosures stated the administrative fee was $15 per participant when in fact VOYA charged an asset based fee in excess of 1%;

   b.   The Rule 404a-5 Disclosures did not accurately report the mutual fund operating costs as disclosed in the fund prospectuses, but instead inflated the fund operating expenses by adding VOYA's asset based administrative fee of .67% to 1.86% to the fund operating expenses; and

   c.   The Rule 404a-5 Disclosures failed to disclose VOYA was receiving an asset based administrative fee of 0.67% to 1.86% of the Cornerstone Plan and other Plan assets.

73.     The Cornerstone Plan and other Plans reasonably relied on VOYA to prepare and distribute accurate and truthful Rule 404a-5 Disclosures for their plan participants.

74.     VOYA breached its fiduciary duty under 29 U.S.C. § 1104(a)(1) to the Cornerstone Plan and other Plans by preparing and distributing the false and misleading Rule 404a-5 Disclosures.

75.     The Cornerstone Plan and all similarly situated Plans have been damaged by VOYA's actions in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF

### Liability for Breach of Co-Fiduciaries Under 29 U.S.C. §1105(a)(2)

76.     The allegations set forth above are incorporated by this reference.

77.     Defined contribution plan sponsors are required to pay reasonable fees for recordkeeping services under 29 U.S.C. §§ 1104(a)(1), 1106(a)(1)(C) and 1108(b)(2)

78.     Defined contribution plan sponsors are required to make administrative and fund operating fee disclosures to plan participants under 29 CFR 2550.404a-5.

79.     Although plan sponsors are responsible for delivering the Rule 404a¬5 Disclosures, they are expected to rely on the services of the plan's recordkeeper to actually prepare and deliver the required disclosures.

80.     Because VOYA discretionary authority or discretionary responsibility in setting its fees and preparing the administrative and fund fee disclosures required by 29 C.F.R. § 2550.404a-5, it was a plan fiduciary.

81.     The Cornerstone Plan and other Plan sponsors breached the fiduciary duties owed to the Plans under 29 U.S.C. §1104(a)(1) by paying VOYA excessive recordkeeping fees and distributing the false and misleading Rule 404a-5 Disclosures.

82.     The Cornerstone Plan and all similarly situated Plan participants have been damaged by the Plan Sponsors' breaches of their fiduciary duty in an amount to be proven at trial.

83.     VOYA knew of and enabled the Cornerstone Plan and other Plan sponsors' breach of their fiduciary duties under 29 U.S.C. §1104(a)(1) by charging excessive fees and preparing and distributing the false and misleading Rule 404a-5 Disclosures, and so is equally liable to the Cornerstone Plan and other similarly situated Plans for those breaches under 29

U.S.C. §1105(a)(2).

## FOURTH CLAIM FOR RELIEF

### Prohibited Transaction - Excessive and Unreasonable Compensation for Services in Violation of 29 U.S.C §1108(b)(2)

84.     The allegations set forth above are incorporated by this reference.

85.     29 U.S.C. § 1106(a)(1)(C), generally prohibits the direct or indirect furnishing of services between a plan and a party-in-interest.

86.     29 U.S.C. § 1002(14) defines a party-in-interest as, among other things, as a person providing services to a plan. As a result of providing recordkeeping, and other administrative services to the Cornerstone Plan and the Plans, VOYA is a party-in-interest to the Plans.

87.     29 U.S.C. § 1108(b)(2) exempts from the prohibitions of 29 U.S.C. § 1106(a)(1)(C) "contracting or making reasonable arrangements with a party in interest for office space, or legal, accounting, or other services necessary for the establishment or operation of the plan, **if no more than reasonable compensation is paid therefor**" (emphasis added).

88.     VOYA charged the Cornerstone Plan and other Plans a fee based on a percentage of the value of the assets in the various plans through increasing the fund operating expenses and receiving 12b-1 fees from the mutual fund sponsors.

89.     Since recordkeeping represents a fixed service at a fixed cost that is contingent on the number of plan participants and not the amount of assets in the plan, there is no basis for charging an asset-based fee for that service, especially a fee that is more than double the average fee charged by investment funds for managing the actual investment of plan assets.

90.     An asset-based fee for recordkeeping also disproportionately impacts the individual participants in the plan, effectively penalizing those participants who have higher asset balances by charging them higher fees for the same services rendered to plan participants with lower asset balances.

91.     A reasonable fixed fee for recordkeeping would be between $35 and $64 per plan participant. By charging an asset based fee which resulted in fees in excess of $1,800 per plan member, VOYA received excessive and unreasonable compensation for its services for which for which no exemption is available under 29 U.S.C. § 1108(b)(2).

92.     By charging excessive and unreasonable compensation for the recordkeeping services, VOYA has caused the Cornerstone Plan and the Plans to breach their fiduciary duties under 29 U.S.C. § 1104(a)(1) by engaging in prohibited transactions in violation of 29 USC § 1106(a).

93.     The Cornerstone Plan and other similarly situated Plans have been harmed by the excessive fees paid to VOYA. .The Supreme Court has recognized that "[e]xpenses, such as management or administrative fees, can sometimes significantly reduce the value of an account in a defined-contribution plan." *Tibble*, 135 S. Ct. at 1825. The U.S. Department of Labor has noted that a 1% higher level of fees (the amount charged by Defendants in this instance) over a 35-year period makes a 28% difference in retirement assets at the end of a participant's career. *U.S. Dep't of Labor, A Look at 401(k) Plan Fees*, at 1–2 (Aug. 2013).

94.     Plaintiff has standing to assert this claim under 29 U.S. Code § 1132(a)(3) and *Harris Trust and Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 245 (2000).

95.     VOYA has been unjustly enriched as a result of charging and receiving excessive fees to the Plan participants in violation of 29 U.S.C. §§1108(b)(2) and

§1106(a)(1)(C).

96.     VOYA is liable to the Cornerstone Plan and other similar Plans enrolled with VOYA to provide retirement plan services for disgorgement of the excessive compensation it received.

## PRAYER FOR RELIEF

Plaintiff, on behalf of the Cornerstone Plan and all similarly situated Plans, respectfully requests that the Court:

a.      Certify the Class, appoint Plaintiff as a class representative, and appoint Franklin D. Azar & Associates P.C., Chimicles & Tikellis LLP and Sherman & Howard L.L.C. as Class Counsel;

b.      Find and declare that VOYA breached its fiduciary duties to the Cornerstone Plan and other Plans by charging an excessive asset based fee.     Find and declare that VOYA breached its fiduciary duties to the Cornerstone Plan and other Plans by creating and distributing false and misleading disclosures under Rule 404a-5 to conceal VOYA's excessive fees;

d.      Find and declare that VOYA is co-liable for any breaches of fiduciary duties by Plan Sponsors arising from creating and distributing false and misleading disclosures under Rule 404a-5

e.      Find and declare that VOYA charged excessive and unreasonable fee for recordkeeping services as described above irrespective of its fiduciary status;

f.      Order VOYA to disgorge and make good to the Plans all losses to the Plans resulting from the excessive fees charged, and to otherwise restore the Plans to the position they would have occupied but for the violations of 29 U.S.C. §1108(b)(2) and 29

USC § 1106(a)(1)(C) by VOYA;

g.     Determine the method by which the Plans' losses should be calculated;

h.     Order VOYA to provide all accountings necessary to determine the amounts VOYA must make good to the Plans;

i.     Surcharge against VOYA and in favor of the Plans all amounts involved in any transactions which such accounting reveals were improper, excessive and/or in violation of ERISA;

j.     Award to the Plaintiff and the Class their reasonable attorney's fees, expert witness fees and costs under 29 U.S.C. §1132(g)(1) and the common fund doctrine;

k.     Order the payment of pre- and post- judgment interest; and

l.     Grant other equitable or remedial relief as the Court deems appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of this matter.

Dated: September 8, 2017

CHIMICLES & TIKELLIS LLP

Pamela S. Tikellis (#2172)
Robert J. Kriner, Jr. (#2546)
A. Zachary Naylor (#4439)
222 Delaware Avenue, Suite 1100
P.O. Box 1035
Wilmington, DE 19899
(302) 656-2500

**FRANKLIN D. AZAR & ASSOCIATES P.C.**
Franklin D. Azar
H. Zachary Balkin
Paul R. Wood
Keith Scranton
Jonathan S. Parrott

14426 E. Evans Ave.
Aurora, CO 80014
(303) 900-5595

**SHERMAN & HOWARD L.L.C.**
Gordon W. Netzorg
633 17th St. Suite 3000
Denver, CO 80202
(303) 297-2900

*Attorneys for Plaintiff*