## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SHARON GOETZ, on behalf of the Cornerstone Pediatric Profit Sharing Plan and as representative of a class of all other similarly situated individual account retirement plans, | ) ) ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 1:17-cv-01289-GMS |
| v. | ) ) | |
| VOYA FINANCIAL, INC. and VOYA RETIREMENT INSURANCE AND ANNUITY COMPANY, | ) ) ) ) | |
| Defendants. | ) | |

## OPENING BRIEF
## IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Patricia R. Urban (DE No. 4011)
PINCKNEY, WEIDINGER, URBAN
 & JOYCE LLC
3911 Kennett Pike, Suite 210
Greenville, DE 19807
(302) 504-1526
purban@pwujlaw.com

James F. Jorden (*pro hac vice*)
Waldemar J. Pflepsen, Jr. (*pro hac vice*)
W. Glenn Merten (*pro hac vice*)
CARLTON FIELDS JORDEN BURT, P.A.
1025 Thomas Jefferson Street, NW
Suite 400 West
Washington, DC 20007
(202) 965-8100
jjorden@carltonfields.com
wpflepsen@carltonfields.com
gmerten@carltonfields.com

*Attorneys for Defendants*

Dated: November 9, 2017

# TABLE OF CONTENTS

**Page(s)**

NATURE AND STAGE OF THE PROCEEDINGS ..................................................1

SUMMARY OF THE ARGUMENT .......................................................................1

STATEMENT OF FACTS - BACKGROUND AND ALLEGATIONS ......................2

APPLICABLE LEGAL STANDARDS ...................................................................4

ARGUMENT ..........................................................................................................5

I.     The Complaint Should Be Dismissed Because Of Improper Collective
Pleading...........................................................................................................5

II.    Count I Fails To State A Claim For Relief ........................................................6

     A.     Plaintiff Has Not Plausibly Alleged That Voya Acted As An
ERISA Fiduciary In Setting Its Compensation .......................................6

     B.     Plaintiff Has Not Plausibly Alleged That Voya's Compensation
Was Unreasonable ..................................................................................8

III.    Count II Fails To State A Claim For Relief .....................................................10

     A.     Preparing Disclosures Prescribed By Rule 404a-5 Is A Purely
Ministerial Function – Not A Fiduciary Function ................................10

     B.     Plaintiff's Allegation That The Rule 404a-5 Disclosures Were
Materially False And Misleading Is Refuted By The Disclosures
Provided ..............................................................................................11

IV.    Plaintiff Has Not Plausibly Alleged A Claim For Co-Fiduciary Liability
Under ERISA Section 405(a)(2) ....................................................................13

V.    Count IV Fails To State A Claim For Relief ...................................................15

     A.     Plaintiff Has Not Plausibly Alleged That Either Voya Defendant
Was A Party-In-Interest With Respect To Plaintiff's Claims...............16

     B.     Plaintiff Has Not Plausibly Alleged That Any Plan Sponsor Had
Knowledge Of The Facts Satisfying The Elements Of A Section
406(a)(1)(C) Transaction .....................................................................17

      C.      Plaintiff Has Not Plausibly Alleged That Voya Had Knowledge Of
The Circumstances That Rendered Its Negotiated Fee
Arrangements Unlawful ..................................................................................... 18

      D.      Asset-Based Fees Do Not *Per Se* Violate ERISA Section
406(a)(1)(C) .................................................................................................... 19

VI.    All Counts Fail Because Plaintiff Seeks Relief Not Available Under
ERISA Section 502(a)(3) ..........................................................................................19

CONCLUSION .....................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...............................................................................................4, 6, 8, 18

*Askew v. R.L. Reppert, Inc.*,
902 F. Supp. 2d 676 (E.D. Pa. 2012) ...........................................................................14

*Atuahene v. City of Hartford*,
10 F. App'x 33 (2d Cir. 2001) .......................................................................................5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................................................................................................4, 5

*Brotherston v. Putnam Invs., LLC*,
2017 WL 1196648 (D. Mass. March 30, 2017) ...............................................................8

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997) ..........................................................................................2

*Caponegro v. U.S. Dep't of Housing and Urban Dev.*,
2017 WL 2197124 (D.N.J. May 18, 2017) ....................................................................5

*CIGNA Corp. v. Amara*,
563 U.S. 421 (2011) ......................................................................................................20

*Danza v. Fid. Mgmt. Tr. Co.*,
533 F. App'x 120 (3d Cir. 2013) ...............................................................................7, 16

*Dolan v. PHL Variable Ins. Co.*,
2016 WL 6879622 (M.D. Pa. Nov. 22, 2016) ...............................................................5

*F.H. Krear & Co. v. Nineteen Named Trs.*,
810 F.2d 1250 (2d Cir. 1987) .........................................................................................7

*Fleming v. Fid. Mgmt. Tr. Co.*,
2017 WL 4225624 (D. Mass. Sept. 22, 2017) .............................................................18

*Harris Trust and Sav. Bank v. Salomon Smith Barney, Inc.*,
530 U.S. 238 (2000) ...........................................................................................15, 18, 19

*Hecker v. Deere & Co.*,
556 F.3d 575 (7th Cir. 2009) .................................................................................7, 8, 13

*In re Ins. Brokerage Antitrust Litig.*,
   618 F.3d 300 (3d Cir. 2010).............................................................................4

*Jacobs v. Verizon Communications Inc.*,
   Case No. 1:16-cv-1082-PGG, Slip Op. at 20 (S.D.N.Y. Sept. 28, 2017) ...................10, 12, 13

*Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A.)*,
   768 F.3d 284 (3d Cir. 2014)..........................................................................6, 7

*Lockheed Corp. v. Spink*,
   517 U.S. 882 (1996)..................................................................................18

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)..................................................................................13

*Marks v. Independence Blue Cross*,
   71 F. Supp. 2d 432 (E.D. Pa. 1999) ..................................................................11

*McCaffree Fin. Corp. v. Principal Life Ins. Co.*,
   811 F.3d 998 (8th Cir. 2016) ..........................................................................7

*Meiners v. Wells Fargo & Co.*,
   2017 WL 2303968 (D. Minn. May 25, 2017).............................................................8

*Montanile v. Bd. of Trs. of the Nat'l Elevator Indus. Health Benefit Plan*,
   136 S. Ct. 651 (2016).................................................................................20

*Neology, Inc. v. Kapsch Trafficcom IVHS, Inc.*,
   2014 WL 4675316 (D. Del. Sept. 19, 2014)..............................................................5

*Patrico v. Voya Financial, Inc.*,
   2017 WL 2684065 (S.D.N.Y. June 20, 2017) .......................................................7, 17

*Pegram v. Herdrich*,
   530 U.S. 211 (2000)................................................................................6, 7

*Reich v. Compton*,
   57 F.3d 270 (3d Cir. 1995)......................................................................14, 18

*Renfro v. Unisys Corp.*,
   671 F.3d 314 (3d Cir. 2011)..............................................................4, 7, 14, 17

*Shaw v. Housing Auth. of Camden*,
   2012 WL 3283402 (D. N.J. Aug. 10, 2012) ..............................................................5

*Sweda v. Univ. of Penn.*,
   2017 WL 4179752 (E.D. Pa. Sept. 21, 2017) ....................................................9, 17, 18, 19

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007).................................................................................2, 8

*Terraza v. Safeway Inc.*,
  241 F. Supp. 3d 1057, 1073 (N.D. Cal. 2017) ..................................12, 13

*Tibble v. Edison Int'l*,
  135 S. Ct. 1823 (2015)....................................................................................9

*Tussey v. ABB, Inc.*,
  2012 WL 1113291 (W.D. Mo. March 31, 2012), *rev'd in part on other
  grounds*, 746 F.3d 327 (8th Cir. 2014) ..........................................................9

*White v. Chevron Corp.*,
  2017 WL 2352137 (N.D. Cal. May 31, 2017) .........................................18

*Wood v. Prudential Ret. Ins. and Annuity Co.*,
  2016 WL 5940946 (D. Conn. Sept. 19, 2016) .........................................20

**Statutes**

29 U.S.C. § 1002(21)(A)................................................................................6

**Other Authorities**

29 C.F.R. § 2509.75-8, D-2 .......................................................................11

29 C.F.R. § 2509.404a-5(c) ........................................................................10

29 C.F.R. § 2509.404a-5(d) ........................................................................10

29 C.F.R.§ 2550.404a-5 ................................................................................1

29 C.F.R. § 2550.404a-5(a) ........................................................................10

29 C.F.R. § 2550.404a-5(b) ........................................................................10

29 C.F.R. § 2550.404a-5(c)(2)(ii)................................................................12

29 C.F.R. § 2550.404a-5(d)(1)(ii)(2) ........................................................13

29 C.F.R. §§ 2550.404a-5(h)(ii)(C) ..........................................................13

75 Fed. Reg. 64,910, n.8 (Oct. 20, 2010)..................................................13

81 Fed. Reg. 21,029 (April 8, 2016) ............................................................8

DOL Field Assistance Bulletin No. 2012-02, 2012 WL 1865026 (EBSA), Q&A
  Q-33 ............................................................................................................13

## NATURE AND STAGE OF THE PROCEEDINGS

This a putative class action involving compensation Defendant Voya Retirement Insurance and Annuity Company ("VRIAC") receives as a retirement plan service provider under thousands of separate contractual arrangements.  Each of those arrangements was negotiated and agreed upon by the plan fiduciary responsible for selecting and monitoring the plan's service providers.  Plaintiff, as representative of and on behalf of the Cornerstone Pediatric Profit Sharing Plan (the "Cornerstone Plan") and all other similarly situated individual account plans (the "Plans"), contends that VRIAC and Voya Financial, Inc. (together "Voya" or the "Voya Defendants") violated and knowingly participated in violations of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and 29 C.F.R.§ 2550.404a-5 promulgated thereunder ("Rule 404a-5").  Specifically, Plaintiff alleges that Defendants received excessive and unreasonable asset-based compensation for recordkeeping and administrative services, and concealed that fact from plan participants.  Plaintiff brings this action under ERISA Section 502(a)(3) seeking to hold Voya liable for "disgorgement" and "all losses to the Plans resulting from the excessive fees."

## SUMMARY OF THE ARGUMENT

Plaintiff's claims suffer from several fundamental flaws.  As a threshold matter, the Complaint should be dismissed in its entirety because Plaintiff asserts all allegations and claims collectively against VRIAC and Voya Financial, and fails to differentiate among Defendants in any way.  Moreover, Plaintiff has not – and cannot – plausibly allege that either Defendant acted as an ERISA fiduciary with respect to its compensation, and the entire Complaint is just an attempt to circumvent the long-established rule that service providers are not fiduciaries with

respect to the terms of their contracts negotiated and approved by the responsible plan fiduciary. Plaintiff also only seeks relief that is not available under ERISA Section 502(a)(3).

Each cause of action also fails for independent reasons. Count I fails because Plaintiff has not plausibly alleged that VRIAC's compensation was unreasonable. Count II fails because Plaintiff's allegations regarding the Rule 404a-5 Disclosures are refuted by the Plan documents that form the basis of the Complaint. Count III fails because Plaintiff has not plausibly alleged that either Defendant breached a fiduciary duty owed to Plaintiff. Finally, Count IV fails because Plaintiff has not adequately pleaded facts constituting a violation of ERISA Section 406(a)(1)(C). The Complaint should be dismissed in its entirety.

## STATEMENT OF FACTS - BACKGROUND AND ALLEGATIONS

VRIAC provides products and services to retirement plans and plan participants across the United States. In 2003, the trustees of the Cornerstone Plan purchased a group annuity contract (the "Contract") from VRIAC as a funding vehicle for the Cornerstone Plan.[1]

The Cornerstone Plan is a participant-directed individual account plan as defined by ERISA. Participants are permitted to direct the investment of their individual plan accounts among the investment options available under the Contract, including investment options that invest in shares of a single underlying mutual fund. *See* Contract §§ 1.20, 3.02, 5.01. The relevant investment options constitute investments in a separate account maintained by VRIAC that, in turn, invests in the underlying mutual funds. *See* Contract §§ 1.28, 3.02, 4.01, 4.04. At

---

[1] Defendants attach four Exhibits: as **Exhibit A**, the Contract with the Cornerstone Plan trustees and VRIAC referenced in the Complaint (Compl. ¶ 2); as **Exhibit B**, one of Plaintiff's account statements containing disclosures she puts at issue (Compl. ¶¶ 76-83);as **Exhibit C**, the annual Rule 404a-5 Disclosures cited by the Complaint (Compl. ¶¶ 36-43); and as **Exhibit D**, a purported plan fee survey referenced in the Complaint (Compl. ¶ 3). Each Exhibit is "integral to or explicitly relied upon in the [C]omplaint," and the Court may consider them in connection with this Motion. *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

the end of 2015, the Cornerstone Plan had 19 participants and $2,797,616 in assets.  Compl. ¶ 1.

The Contract permits VRIAC to deduct a Daily Asset Charge (or "DAC") from the separate

account as compensation for its "mortality and expense risks."  *See* Contract §§ Specifications,

4.09.  The DAC is determined by plan- and fund-specific factors, and consists of both a base

amount and related adjustments.  *Id.*

       Plaintiff is allegedly a participant in the Cornerstone Plan.[2]   Like the other plan

participants, Plaintiff receives periodic information from the plan sponsor regarding the

Cornerstone Plan and its investment options, including quarterly account statements and annual

disclosures that include the information mandated by Rule 404a-5.  Although the Complaint

alleges that Voya concealed its asset-based fees from the Cornerstone Plan participants, Compl. ¶

5, the quarterly account statements list the DAC for each fund option and disclose that "some of

the plan's administrative expenses … were paid from the total annual operating expenses … of

the plan's designated investment alternatives[.]"  *See* Account Statement, Exhibit B.  Similarly,

while Plaintiff alleges that the Rule 404a-5 Disclosures (Exhibit C) were materially false and

misleading, these allegations are premised on the mistaken assumption that "all of the investment

options in the Cornerstone Plan are mutual funds."  Compl. ¶ 35.  Finally, in support of her

assertion that Voya charges excessive fees, Plaintiff compares the $2.8 million, 19-participant

Cornerstone Plan to the aggregated results from an investment consulting firm survey of fees for

defined contribution plans that dwarf the Cornerstone Plan in asset size and in the number of

participants.  Compl. ¶ 3; 2015 NEPC Survey (Exhibit D).

---

[2] While not necessary for the Court to address, Defendants reserve all arguments relating to the facts that Plaintiff is no longer a participant in the Cornerstone Plan and the Cornerstone Plan no longer uses Voya as a service provider.

Based on these mistaken assumptions and spurious comparisons, Plaintiff asserts four separate claims against Defendants:

(i)    Voya breached its fiduciary duty under ERISA Section 404(a)(1) to the Cornerstone Plan and other Plan participants by charging excessive recordkeeping fees.  Compl. ¶¶ 64-68 (Count I).

(ii)   Voya breached its fiduciary duty under ERISA Section 404(a)(1) to the Cornerstone Plan and other Plans by preparing and distributing false and misleading Rule 404a-5 disclosures.  Compl. ¶¶ 69-75 (Count II).

(iii)  Cornerstone and other Plan sponsors breached their fiduciary duties under ERISA Section 404(a)(1) by paying Voya excessive fees and distributing false and misleading Rule 404a-5 Disclosures, and  the undifferentiated "VOYA" is equally liable for those breaches as a co-fiduciary under ERISA Section 405(a)(2). Compl. ¶¶ 76-83 (Count III).

(iv)   Voya is liable as a non-fiduciary under ERISA Section 502(a)(3) for disgorgement of the excessive fees it received in violation of ERISA prohibited transaction Section 406(a)(1)(C) and for all losses to the Plans resulting from those fees.  Compl. ¶¶ 84-96 (Count IV).

## APPLICABLE LEGAL STANDARDS

"Because Federal Rule of Civil Procedure 8(a)(2) 'requires a "showing," rather than a blanket assertion, of entitlement to relief,' courts evaluating the viability of a complaint under Rule 12(b)(6) must look beyond conclusory statements and determine whether the complaint's well-pled factual allegations, taken as true, are 'enough to raise a right to relief above the speculative level.'"  *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 319 (3d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, n.3 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court "must examine the context of a claim, including the underlying substantive law, in order to assess its plausibility."  *Renfro v. Unisys Corp.,* 671 F.3d 314, 321 (3d Cir. 2011).

4

**ARGUMENT**

## I.    The Complaint Should Be Dismissed Because Of Improper Collective Pleading

Federal Rule of Civil Procedure 8(a)(2) mandates that a defendant be given fair notice of what the claim is and the grounds upon which it rests. *Twombly*, 550 U.S. at 555 (citations and quotations omitted). Consequently, in order to satisfy Rule 8, "[a] plaintiff must specify which defendants performed which acts." *Caponegro v. U.S. Dep't of Housing and Urban Dev.*, 2017 WL 2197124, at *4 (D.N.J. May 18, 2017) (citations and quotations omitted). Allegations "specific to no Defendant and generic as to all, are unhelpful in further flushing out a facially plausible claim[.]" *Neology, Inc. v. Kapsch Trafficcom IVHS, Inc.*, 2014 WL 4675316, at *4 (D. Del. Sept. 19, 2014) (citing *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [the plaintiff's] complaint failed to satisfy [the] minimum standard" that "a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests.") (quotation marks and citations omitted)).[3]

The Complaint fails to satisfy these basic pleading requirements. "Even under the most liberal notice pleading requirements of Rule 8(a), a plaintiff must differentiate between defendants." *Shaw v. Housing Auth. of Camden*, 2012 WL 3283402, at *2 (D. N.J. Aug. 10, 2012). Here, rather than identifying particular conduct on the part of each Defendant, Plaintiff collectively defines both Defendants as "VOYA" in the preamble to the Complaint and afterwards levies undifferentiated factual assertions and legal conclusions against the amalgamated Defendants. *See*, *inter alia*, Compl. ¶¶ 36 (alleging the collective "VOYA" provided disclosures to Plan participants); 44 (alleging undifferentiated "VOYA" receives

---

[3] *See also Dolan v. PHL Variable Ins. Co.*, 2016 WL 6879622, at *8-9 (M.D. Pa. Nov. 22, 2016) (collecting cases supporting the holding that "lumping together all defendants proves fatal" because the allegations fail to satisfy Rule 8).

different types of compensation); 65 ("VOYA is a fiduciary of the Cornerstone Plan … because VOYA [sic] discretionary authority or discretionary responsibility in setting its compensation by determining the amount VOYA would add to the operating expenses of the mutual funds"); 70 ("VOYA is a fiduciary of the Cornerstone Plan … because VOYA [sic] discretionary authority or discretionary responsibility in preparing the administrative and fund fee disclosures[.]").  At no point in either the factual allegations, class allegations, four separate claims for relief or omnibus prayer for relief does Plaintiff distinguish between Voya Financial and VRIAC, or attribute purported actions to a specific individual defendant.  Compl. *passim*.  Accordingly, the Complaint fails to "plead[] factual content that allows the court to draw the reasonable inference" that any particular defendant "is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, and must be dismissed.[4]

## II.    Count I Fails To State A Claim For Relief

### A.    Plaintiff Has Not Plausibly Alleged That Voya Acted As An ERISA Fiduciary In Setting Its Compensation

Under ERISA, a party not specifically named as a fiduciary of a plan owes a fiduciary duty only "to the extent" that party (i) exercises any discretionary authority or control over management of the plan or its assets; (ii) offers "investment advice for a fee" to plan members; or (iii) has "discretionary authority" over plan "administration."  29 U.S.C. § 1002(21)(A); *see Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A.)*, 768 F.3d 284, 291 (3d Cir. 2014).  Thus, courts assessing claims under ERISA must ask "whether [a] person was acting as a fiduciary . . . when taking the action subject to complaint."  *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).  Here, because neither Defendant is a named fiduciary of the Cornerstone

---

[4] To the extent this Brief uses "Voya," it refers to both Defendants, unless another intention is clear.   Defendants' use of the collective reference should not be construed as an admission that Plaintiff's collective pleading satisfies Rule 8(a).  With respect to the claims asserted here, there is no dispute that VRIAC is the service provider, and Voya Financial is not.

Plan, Plaintiff must plead facts demonstrating that each of them, independently, acted as a fiduciary "when taking the action subject to complaint."  *Id.*  Plaintiff contends that the Voya Defendants are fiduciaries because they have "discretionary authority or discretionary responsibility in setting its compensation by determining the amount Voya would add to the operating expenses of the mutual funds."  Compl. ¶ 65.  Such conclusory allegations, however, ignore that the Contract between the Cornerstone Plan trustees and VRIAC clearly authorizes the asset-based charges of which Plaintiff complains.  *See* Contract §§ Specifications, 4.09.

It is well-established that a service provider "does not act as a fiduciary with respect to the terms in the service agreement if it does not control the named fiduciary's negotiation and approval of those terms."  *Renfro,* 671 F.3d at 324 (quoting *Hecker v. Deere & Co.,* 556 F.3d 575, 583 (7th Cir. 2009)); *accord McCaffree Fin. Corp. v. Principal Life Ins. Co.,* 811 F.3d 998, 1003 (8th Cir. 2016).  "When a service provider and a plan trustee negotiate at arm's length over the terms of their agreement, discretionary control over plan management lies not with the service provider but with the trustee, who decides whether to agree to the service provider's terms."  *Santomenno,* 768 F.3d at 293.  As a result, "[w]hen a person who has no relationship to an ERISA plan is negotiating a contract with that plan, he … is not an ERISA fiduciary with respect to the terms of the agreement for his compensation."  *Renfro,* 671 F.3d at 324 (quoting *F.H. Krear & Co. v. Nineteen Named Trs.,* 810 F.2d 1250, 1259 (2d Cir. 1987)); *Danza v. Fid. Mgmt. Tr. Co.,* 533 F. App'x 120, 124 (3d Cir. 2013) (holding "at the point that [the service provider] was negotiating its fees . . . it was not a fiduciary of the plan"); *see also Patrico v. Voya Financial, Inc.,* 2017 WL 2684065, at *3 (S.D.N.Y. June 20, 2017) (same).

Here, the Contract explicitly describes the asset-based fees (*i.e.,* the DAC) negotiated and agreed to by the Cornerstone Plan trustees.  *See* Contract § Specifications.  Under these

circumstances, Plaintiff alleges no facts from which it can be plausibly inferred that either Defendant was acting as a fiduciary with respect to its own compensation. Accordingly, Count I must be dismissed.

**B.      Plaintiff Has Not Plausibly Alleged That Voya's Compensation Was Unreasonable**

Count I also fails because Plaintiff has not plausibly alleged the compensation Voya received was unreasonable. Plaintiff alleges that, pursuant to ERISA Section 408(b)(2) which provides an exemption for transactions otherwise prohibited by ERISA Section 406(a), Voya may receive "no more than reasonable compensation" for "its" services. Compl. ¶¶ 66, 95. "Reasonableness," however, is not judged by vague, unsupported *post facto* assertions that fees could have been lower, but by a "meaningful benchmark against which [the service provider's] fees can be compared." *Meiners v. Wells Fargo & Co.*, 2017 WL 2303968, at *3 (D. Minn. May 25, 2017). The Department of Labor recently confirmed that "[a]t bottom, the [reasonableness] standard simply requires that compensation not be excessive, *as measured by the market value of the particular services, rights, and benefits*[.]" 81 Fed. Reg. 21,029 (April 8, 2016) (emphasis added); *see also Brotherston v. Putnam Invs., LLC*, 2017 WL 1196648, at *6 (D. Mass. March 30, 2017) (citing *Hecker*, 556 F.3d at 586, and holding that fees should be set against the "backdrop of market competition").

The market for retirement plan products and services is presumptively open and competitive. *See Iqbal,* 556 U.S. at 679 ("[d]etermining whether a complaint states a plausible claim [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). Plaintiff does not allege otherwise. Thus, the alleged 47,000 fee arrangements Plaintiff challenges actually belie Plaintiff's claim as they show wide-spread market acceptance of Defendants' products and services, which would not be the case if

8

Defendants' compensation were truly unreasonable.  Compl. ¶¶ 18, 91.  Likewise, Plaintiff's vague allegations regarding the allegedly similar but impliedly *low-cost brokerage services* do not render Plaintiff's claim any more plausible, Compl. ¶¶ 21, 23, because, *inter alia*, there are no allegations as to the actual fees or costs for such services upon which any plausible inference can be drawn as to the reasonableness of Defendants' fees.

In order for thousands of agreed-upon fee arrangements to plausibly show any sort of fiduciary misconduct, Plaintiff would have to allege something more – something to show that those arrangements do not reflect the market value of Defendants' services.  *See Sweda v. Univ. of Penn.,* 2017 WL 4179752 at *8 (E.D. Pa. Sept. 21, 2017) ("plaintiffs need something more than a claim that there may be (or even are) cheaper options available").  Nothing close to that is alleged.  Aside from vague assertions as to allegedly similar brokerage services, the most Plaintiff alleges is that Voya concealed its asset-based fees from plan participants.  But it is the plan sponsors, not participants, who are responsible for selecting and monitoring plan service providers.  Moreover, there are no allegations that the DAC was concealed from the Cornerstone Plan trustees, nor could there be as the DAC is explicitly described in the Contract agreed to by the Cornerstone Plan trustees.

Nor does Plaintiff's reference to the NEPC Survey render her claim any less implausible.  The survey is plainly not representative of the small plan market upon which Plaintiff's claim is based, as the surveyed plans dwarf the $2.8 million Cornerstone Plan both in asset size and number of participants.  Indeed, it has been judicially acknowledged that larger plans should be able to claim cost-efficiencies that smaller plans cannot.  *See Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1825 (2015) (acknowledging, in an "excessive fee" case, that larger plans may take advantage of lower rates where small-scale investors cannot); *Tussey v. ABB, Inc.,* 2012 WL

1113291, at * 12 (W.D. Mo. March 31, 2012) (noting that "administration and recordkeeping fees are generally lower for larger plans"), *rev'd in part on other grounds*, 746 F.3d 327 (8th Cir. 2014).   Moreover, nothing in the survey supports the conclusion that the thousands of fee arrangements challenged by Plaintiff are unreasonable.   Accordingly, Count I must be dismissed.

## III.   Count II Fails To State A Claim For Relief

Count II, which alleges that Voya breached its fiduciary duties by preparing and distributing false and misleading Rule 404a-5 disclosures, fails because Plaintiff has not plausibly alleged that either Voya Defendant acted as an ERISA fiduciary with respect to the Rule 404a-5 disclosures or that those disclosures were materially false and misleading.

### A.   Preparing Disclosures Prescribed By Rule 404a-5 Is A Purely Ministerial Function – Not A Fiduciary Function

Plaintiff alleges that Voya is an ERISA fiduciary because it has "discretionary authority or discretionary responsibility in preparing the administrative and fund fee disclosures required by [Rule 404a-5]."   Rule 404a-5 "outlin[es] the disclosure requirements that ERISA plan administrators must follow to comply with their fiduciary duties," *Jacobs v. Verizon Communications Inc.,* Case No. 1:16-cv-1082-PGG, Slip Op. at 20 (S.D.N.Y. Sept. 28, 2017), (Dkt. No. 70), including the specific plan and investment-related information that must be disclosed to plan participants.   *See* 29 C.F.R. § 2509.404a-5(c), (d).   In other words, it is the *plan administrator's* responsibility.   *Id.* § 2550.404a-5(a) (noting that the plan administrator must ensure that participants and beneficiaries "are made aware of their rights and responsibilities" and provided "sufficient information . . . including fees and expenses . . . to make informed decisions"); § 2550.404a-5(b) (imposing on the "plan administrator" the duty to comply with the rule's disclosure requirements).   Neither Voya Defendant is or is alleged to be a plan administrator.

Moreover, according to Department of Labor regulations, "a person who performs purely ministerial functions . . . for an employee benefit plan within a framework of policies, interpretations, rules, practices and procedures made by other persons is not a fiduciary[.]"  29 C.F.R. § 2509.75-8, D-2.   Purely ministerial functions include "[p]reparation of employee communications material" and "advising participants of their rights and options under the plan." *Id.*  Thus, based on the allegations, in preparing and distributing the disclosures prescribed by Rule 404a-5, Voya did no more than perform purely ministerial functions "within a framework . . . made by other persons."  *See Marks v. Independence Blue Cross*, 71 F. Supp. 2d 432 (E.D. Pa. 1999) (creating and providing notifications to plan beneficiaries when plan asks for them are purely ministerial functions performed "within a framework . . . made by other persons").  Accordingly, Count II must be dismissed.

### B.      Plaintiff's Allegation That The Rule 404a-5 Disclosures Were Materially False And Misleading Is Refuted By The Disclosures Provided

Count II also fails because Plaintiff is unable plausibly to allege that the Rule 404a-5 Disclosures were materially false and misleading.  Plaintiff alleges that the Disclosures:

a.      Did not accurately report the mutual fund operating costs as disclosed in the fund prospectuses, but instead inflated the fund operating expenses by adding VOYA's asset based administrative fee of .67% to 1.86% to the fund operating expenses;

b.      Failed to disclose VOYA was receiving an asset based administrative fee of 0.67% to 1.86% of the Cornerstone Plan and other Plan assets; and

c.      Stated the administrative fee was $15 per participant when in fact VOYA charged an asset based fee in excess of 1%.

Compl. ¶¶ 38, 40, 72.  Central to these allegations is the claim that "VOYA" "concealed the true amount of its fees" from plan participants.  *Id.* ¶ 5.

As to the allegation that VOYA "did not accurately report the mutual fund operating costs", Plaintiff's claim is premised on the mistaken belief that "all of the investment options in

the Cornerstone Plan are mutual funds," *id.* ¶ 35.   In fact, the relevant plan investment options constitute investments in a group annuity separate account which, in turn, invests in the underlying mutual funds.   *See* Contract §§ 1.28, 3.02, 4.01, 4.04.   Consequently, the underlying "mutual fund operating costs" are correctly included as part of the gross operating expenses of the separate account—which also include the DAC—as required under Rule 404a-5.

Moreover, contrary to Plaintiff's allegation that Voya failed to disclose the administrative fee it actually received, the only asset charge imposed by Voya is the DAC, which is disclosed to the Plan and participants as evidenced by Plaintiff's own quarterly account statements reflecting the DAC for each Cornerstone Plan fund investment option.[5]   *See* Account Statement at 7-8 (disclosing "total Separate Account charges" (*i.e.,* the DAC) by plan investment option).   Finally, neither the quarterly statements nor the Rule 404a-5 Disclosures state that the $15 per participant fee includes all plan administrative fees and expenses or that there are no asset-based plan administrative fees or expenses.[6]

To the extent Plaintiff is alleging that the amount of the DAC must be separately disclosed in the Rule 404a-5 Disclosures, this claim fails because courts have held that Rule 404a-5 does not require disclosure of the portion of a plan investment option's gross expense ratio being applied to pay recordkeeping expenses.   *Jacobs*, Dkt. No. 70 at 23; *Terraza v.*

---

[5] Certain of Plaintiff's calculations of VRIAC's asset-based charges do not match the DAC as shown in Plaintiff's quarterly statements because Plaintiff appears to use the wrong net expense ratios from the Rule 404a-5 Disclosures in her calculations.   *See* Compl. ¶¶ 37, 39.

[6] In accordance with Rule 404a-5, *see* 29 C.F.R. § 2550.404a-5(c)(2)(ii), Plaintiff's quarterly participant account statement also describes and states the amount of the $15 per participant fee and discloses that "[i]n addition to [this fee], some of the plan's administrative expenses for the preceding quarter were paid from the total annual operating expenses of one or more of the plan's designated investment alternatives (e.g. through revenue sharing arrangements, 12b-1 fees, sub-transfer agent fees)."   *See* Account Statement, Exhibit B, at 4.

*Safeway Inc.,* 241 F. Supp. 3d 1057, 1073 (N.D. Cal. 2017).[7]  More generally, courts have recognized that "[t]he total fee, not the internal, post-collection distribution of the fee, is the critical figure for someone interested in the cost of including a certain investment in her portfolio and the net value of that investment."  *Hecker,* 556 F.3d at 586.  "Information regarding [t]he later distribution of the fees … is not information the participants need[] to know to keep from acting to their detriment, and thus [is] not material."  *Jacobs*, Dkt. No. 70 at 24 (quoting *Hecker*, 556 F.3d at 586) (internal quotations omitted).  Similarly, in the preamble to the final rulemaking adopting Rule 404a-5, the Department of Labor agreed that "such a breakdown is not necessary, or particularly useful, to participants and beneficiaries; the final rule therefore also allows for 'aggregate' disclosure of administrative expenses, as proposed."  75 Fed. Reg. 64,910, n.8 (Oct. 20, 2010); *see also Terraza,* 241 F. Supp. 3d at 1073 ("fiduciaries are [not] required to disclose the 'breakdown' of the gross expense ratio associated with each investment option").  Accordingly, Count II must be dismissed.[8]

## IV.    Plaintiff Has Not Plausibly Alleged A Claim For Co-Fiduciary Liability Under ERISA Section 405(a)(2)

Plaintiff also alleges that the Cornerstone Plan and other plan sponsors breached their fiduciary duties by paying Voya excessive recordkeeping fees and by distributing false and

---

[7] *See also* 29 C.F.R. §§ 2550.404a-5(d)(1)(ii)(2), (h)(ii)(C) (requiring the "expense ratio" for each plan investment "alternative" to include, *inter alia*, "[a]ny ... fees or expenses ... that reduce the alternative's rate of return (e.g., … recordkeeping fees, administrative fees, separate account expenses, mortality and expense risk fees)"); DOL Field Assistance Bulletin No. 2012-02, 2012 WL 1865026 (EBSA), Q&A Q-33, (plan administrative expenses paid by liquidating shares of underlying mutual fund held by plan investment option "must be reflected in the designated investment alternative's total annual operating expenses").

[8] Plaintiff also lacks constitutional standing to bring Count II because there is no causal connection between the alleged misconduct (misleading disclosures) and the alleged harm (excessive fees) since the plan sponsor, not plan participants, is responsible for hiring and monitoring plan service providers.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ("there must be a causal connection between the injury and the conduct complained of").

misleading participant fee disclosures and that the Voya Defendants are equally liable for those breaches as a co-fiduciary under ERISA Section 405(a)(2).  Compl. ¶¶ 81-83.  In relevant part, Section 405(a)(2) provides:

> a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances: . . . (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach;

As a predicate to liability, Plaintiff must plausibly allege that each Voya Defendant breached duties owed in its role as a fiduciary.  *Renfro,* 671 F.3d at 324, n.5.  As discussed above in Sections II and III, Plaintiff has not plausibly alleged that either Voya Defendant acted as a fiduciary with respect to its compensation or the Rule 404a-5 Disclosures, that the compensation was excessive or that the Rule 404a-5 Disclosures were false and misleading.

Moreover, the Complaint is also devoid of any non-conclusory allegations from which it can be plausibly inferred that the Cornerstone Plan and other plan sponsors acted imprudently or disloyally in hiring or paying Voya.  *See Askew v. R.L. Reppert, Inc*., 902 F. Supp. 2d 676, 686 (E.D. Pa. 2012) (to state breach of fiduciary duty claim "plaintiff must aver some acts or omissions by an ERISA fiduciary in violation of the fiduciary's duties"); *Reich v. Compton*, 57 F.3d 270, 291 (3d Cir. 1995) ("trustees violate their duty of loyalty when they act in the interests of the plan sponsor rather than with an eye single to the interests of the participants and beneficiaries of the plan") (internal quotations and citations omitted).  There are no allegations that the plan sponsors acted in their own interests or that their process for selecting or monitoring Voya was flawed or that they knew or should have known that Voya's fees were excessive.  For these reasons, the Complaint also fails to plausibly allege a nexus between Voya's alleged fiduciary misconduct and the alleged fiduciary misconduct of any plan sponsor. *See Askew,* 902 F. Supp. 2d at 687 ("to pursue a claim for liability against one fiduciary based

upon the breach by a second co-fiduciary under [Section 404(a)(2)], a plaintiff must aver sufficient factual matter to support a reasonable inference that that the first fiduciary's breach caused his co-fiduciary to also commit a breach.").  Accordingly, Count III must be dismissed.

## V.    Count IV Fails To State A Claim For Relief

In Count IV, Plaintiff seeks to fashion a claim based on ERISA prohibited transaction § 406(a)(1)(C) and the Supreme Court's decision in *Harris Trust and Sav. Bank v. Salomon Smith Barney, Inc.,* 530 U.S. 238 (2000), which interpreted ERISA § 502(a)(3) as authorizing certain suits for "appropriate equitable relief" against non-fiduciaries for engaging in prohibited transactions.[9]  To state a claim under *Harris Trust*, "the transferee must be demonstrated to have had actual or constructive knowledge of the circumstances that rendered the transaction unlawful.  Those circumstances, in turn, involve a showing that the *plan fiduciary*, with actual or constructive knowledge of the facts satisfying the elements of a § 406(a) transaction, caused the plan to engage in the transaction."  *Harris Trust,* 530 U.S. at 251 (emphasis in original).  Section 406(a)(1)(C) provides, in relevant part, that "[e]xcept as provided in [ERISA § 408(b)(2)] ... [a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect … furnishing of goods, services, or facilities between the plan and a party in interest."  Count IV fails because Plaintiff has not plausibly alleged that Voya was a party-in-interest at the time the plan sponsor agreed to its compensation, that a plan fiduciary caused the plan to engage in the alleged violation with the requisite knowledge, or that Voya itself had the requisite knowledge.

---

[9] Count IV identifies the prohibited transaction as "Excessive and Unreasonable Compensation for Services in Violation of [§ 408(b)(2)]."  Section 408(b)(2), however, imposes no duty on either fiduciaries or parties-in-interest.  Rather, it exempts certain transactions (referred to generally as services necessary for the establishment or operation of the plan) otherwise prohibited by § 406(a)(1)(C) if no more than "reasonable compensation" is paid therefor.

**A.      Plaintiff Has Not Plausibly Alleged That Either Voya Defendant Was A Party-In-Interest With Respect To Plaintiff's Claims**

To state a claim under *Harris Trust*, Plaintiff must first plausibly allege that a Voya Defendant "is a party in interest that engaged in one of the statutorily prohibited transactions." *Danza,* 533 F. App'x at 125.   In *Danza,* a plan participant sued two related service providers for allegedly violating various ERISA provisions, including § 406(a)(1)(C), by charging participants an excessive service fee for reviewing domestic relations orders.   *Id.* at 122.   In rejecting the participant's argument that a prohibited transaction occurred when the plan sponsor caused the plan to hire and pay the service provider, the court reasoned:

> While [the service provider] is currently a party in interest as a service provider to the plan, it was not "providing services" and was not a fiduciary when the [service contract] was signed, so that transaction did not fall within a prohibited category.
>
> Moreover, "Congress defined 'party in interest' to encompass those entities that a fiduciary might be inclined to favor at the expense of the plan's beneficiaries." Here, there is no allegation that [plan sponsor] had a prior relationship with [the service provider] and there is no fact from which this Court could infer that they showed favoritism to each other or did anything other than engage in arms-length negotiation.   Negotiation between such unaffiliated parties does not fall into the category of transactions that Section 406(a) was meant to prevent.

*Id.* at 125-26 (citations omitted).

Another court in this Circuit has rejected a closely analogous ERISA prohibited transaction claim for similar reasons.   In *Sweda*, plaintiffs argued that the University's contract with TIAA-CREF for administrative services constituted a prohibited transaction under § 406(a) of ERISA on essentially the same theory as in this matter – that the fees charged were excessive, that lower fees could have been negotiated, and that TIAA-CREF was liable as a "party in interest" to this fiduciary breach.   Judge Pratter promptly disposed of this argument:

> The plaintiffs seek recovery under this section of ERISA under the theory that the contractual arrangement with TIAA CREF and Vanguard constituted a prohibited transaction.   This cannot be correct.   Plaintiffs argue that paying these companies constitutes a . . . furnishing of services under § 1106(a)(1)(C). . . . If such an

16

> argument were true, then any time plan administrators contracted with another party to provide services to plan participants in exchange for money (which includes the basic elements of retirement plans, including making mutual funds available or recordkeeping service) it would qualify as a prohibited transaction. . . . Perhaps Plaintiffs attempt to balance on such an analytical tightrope because they cite no court that has been persuaded by such a novel argument.

*Sweda,* 2017 WL 4179752 at *11.

The same is true here.   Plaintiff does not allege that any plan sponsor had a prior relationship with either Voya Defendant at the time the plan sponsors agreed to hire and pay it for its plan recordkeeping and other administrative services.   Nor does Plaintiff allege any facts from which it could be inferred that either Defendant and any plan sponsor showed favoritism to each other or did anything other than engage in arm's-length negotiation.[10]

### B.   Plaintiff Has Not Plausibly Alleged That Any Plan Sponsor Had Knowledge Of The Facts Satisfying The Elements Of A Section 406(a)(1)(C) Transaction

The Complaint alleges "VOYA caused the Cornerstone Plan and the Plans to breach their fiduciary duties under 29 U.S.C. § 1104(a)(1) by engaging in prohibited transactions in violation of 29 U.S.C. 1106(a)."   Compl. ¶ 92.   But as discussed above, Plaintiff has not plausibly alleged that the Voya Defendants are Plan fiduciaries.   *See, e.g., Patrico,* 2017 WL 2684065, at *4 (dismissing Section 406(a)(1)(C) prohibited transaction claim against service provider where complaint failed "to allege that any ERISA Fiduciary had actual or constructive knowledge that the fees paid … are excessive").   Accordingly, dismissal of Counts I through III on the basis that Voya is not an ERISA fiduciary requires dismissal of Count IV as well.

Nor has Plaintiff adequately alleged that the Cornerstone Plan trustees, as the fiduciaries responsible for negotiating the Contract, had actual or constructive knowledge that the fees paid

---

[10] The Third Circuit also has held that participation in a breach of fiduciary duty is not actionable under § 502(a) (3).   *Renfro*, 671 F.3d at 325 ("29 U.S.C. § 1132(a)(3) does not authorize suit against nonfiduciaries charged solely with participating in a fiduciary breach") (internal quotations omitted).

were excessive.  In this regard, to properly plead a claim for a prohibited transaction, Plaintiff

must plausibly allege that the plan sponsor retained Voya "with the subjective intent to benefit a

party in interest."  *Sweda,* 2017 WL 4179752, at *11 (quoting *Reich*, 57 F.3d at 275); *see also*

*Fleming v. Fid. Mgmt. Tr. Co.*, 2017 WL 4225624, at *8 (D. Mass. Sept. 22, 2017) ("Generally

[406(a)] is concerned about 'commercial bargains that present a special risk of plan

underfunding because they are struck with plan insiders, presumably not at arm's length'")

(quoting *Lockheed Corp. v. Spink*, 517 U.S. 882, 893 (1996)).  Plaintiff offers no plausible

explanation why Cornerstone and tens of thousands of other Plan sponsors allegedly would enter

into service contracts with Voya knowing Voya's compensation thereunder was excessive.  Nor

does Plaintiff allege that any such breach benefited the plan fiduciaries at the expense of plan

participants or that the process of selecting the service provider was imprudent.  *White v.*

*Chevron Corp.*, 2017 WL 2352137, at *6-18 (N.D. Cal. May 31, 2017); *see also supra* Section

IV.  Instead, the Complaint contains only conclusory allegations that the Plan fiduciaries violated

their fiduciary obligations.  *See* Compl. ¶ 56.  *See also, supra*, Argument IV.  Accordingly,

Count IV should be dismissed.

### C.   Plaintiff Has Not Plausibly Alleged That Voya Had Knowledge Of The Circumstances That Rendered Its Negotiated Fee Arrangements Unlawful

*Harris Trust* also requires that the party-in-interest ("transferee") must be demonstrated

to have had actual or constructive knowledge that the transaction was unlawful.  *Harris Trust,*

530 U.S. at 251.  Although Plaintiff alleges that "when it offered asset-based recordkeeping

services, VOYA knew or should have known that such charges were unreasonable and violated .

. . [§ 406(a)(1)(C)]," Compl. ¶ 55, such conclusory allegations "are not entitled to the assumption

of truth."  *Iqbal*, 556 U.S. at 679.  Moreover, the Supreme Court has acknowledged "concern that

ERISA should not be construed to require counterparties to transactions with a plan to monitor

the plan for compliance with each of ERISA's intricate details," as "it may be that such concerns should inform courts' determinations of what a transferee should (or should not) be expected to know when engaging in a transaction with a fiduciary." *Harris Trust,* 530 U.S. at 252, 253. Here, Plaintiff has failed to plausibly allege that Voya, while openly negotiating as a third-party service provider with thousands of Plans, possessed the requisite knowledge that the transactions imposed excessive and unreasonable fees.

### D.   Asset-Based Fees Do Not *Per Se* Violate ERISA Section 406(a)(1)(C)

Plaintiff also appears to assert that merely charging an asset-based fee amounts to a *per se* prohibited transaction for excessive and unreasonable compensation.   Compl. ¶¶ 88-91. Indeed, the Complaint offers no other basis as to why the DAC is unreasonable, positing that "[a] reasonable fixed fee for recordkeeping would be between $35 and $64 per plan participant." *Id.* at 91.   In *Sweda*, a sister court in this Circuit addressed this same claim and concluded that choosing a flat per participant fee or asset-based model is not an ERISA violation and instead is a question left to the discretion of a plan administrator. *Sweda,* 2017 WL 4179752, at *8.  And in this regard, the court in addressing a claim for "unnecessary fees" noted that "[t]he plaintiffs' argument that fiduciaries must maintain a myopic focus on the singular goal of lowering fees was soundly rejected in *Renfro*." *Id.* at *9.  The Complaint here suffers from the same defect.

## VI.   All Counts Fail Because Plaintiff Seeks Relief Not Available Under ERISA Section 502(a)(3)

Plaintiff's demands for "VOYA to disgorge and make good to the Plans all losses … resulting from the excessive fees charged," Compl., Prayer for Relief (f); ¶¶ 10, 96, do not state claims under ERISA § 502(a)(3), because the monetary relief sought is not equitable.  Section 502(a)(3), the basis for all of Plaintiff's claims, authorizes suits only for certain injunctive or "other appropriate equitable relief."  Plaintiff does not seek, however, relief from any particular

funds or property in Defendants' possession. Rather, she attempts to recover from Defendants' general assets by holding them liable for an amount of money equal to the excessive fees allegedly received and the losses to the Plans resulting those fees. *See Montanile v. Bd. of Trs. of the Nat'l Elevator Indus. Health Benefit Plan*, 136 S. Ct. 651, 657 (2016) ("Equitable remedies are, as a general rule, directed against some specific thing; they give or enforce a right to or over some particular thing … rather than a right to recover a sum of money generally out of the defendant's assets" (citation omitted)). Because this is a *legal* remedy, each of Plaintiff's claims must be dismissed. *Wood v. Prudential Ret. Ins. and Annuity Co*., 2016 WL 5940946, at *5 (D. Conn. Sept. 19, 2016) (dismissing claim for disgorgement by non-fiduciary of "undisclosed, excessive, and unreasonable compensation" on grounds that it was a request for "legal relief").

While the Supreme Court has recognized *in dicta* the possibility of a type of monetary remedy – known as a "surcharge" – being a form of "appropriate equitable relief," it is not available here. The Supreme Court made clear that such a remedy, even if otherwise appropriate, could only be sought against an ERISA fiduciary and then only upon a showing of actual harm and causation. *CIGNA Corp. v. Amara,* 563 U.S. 421, 442, 444 (2011). The surcharge remedy is not available here because, as to all Counts, Plaintiff has not plausibly alleged that either Defendant acted as a fiduciary. The accounting sought by Plaintiff is barred for the same reason. Further, as to Count II the surcharge remedy is not available because there is no nexus between the alleged fiduciary breach (materially misleading disclosures) and the alleged harm (excessive fees). Accordingly, each of Plaintiff's claims must be dismissed.

## CONCLUSION

For the reasons set forth above, the Complaint should be dismissed.

PINCKNEY, WEIDINGER, URBAN
 & JOYCE LLC

*/s/ Patricia R. Urban*
Patricia R. Urban (DE No. 4011)
3911 Kennett Pike, Suite 210
Greenville, DE 19807
(302) 504-1526
purban@pwujlaw.com

James F. Jorden (*pro hac vice*)
Waldemar J. Pflepsen, Jr. (*pro hac vice*)
W. Glenn Merten (*pro hac vice*)
CARLTON FIELDS JORDEN BURT, P.A.
1025 Thomas Jefferson Street, NW
Suite 400 West
Washington, DC 20007
(202) 965-8100
jjorden@carltonfields.com
wpflepsen@carltonfields.com
gmerten@carltonfields.com

*Attorneys for Defendants*

Dated: November 9, 2017