## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SHARON GOETZ, on behalf of the Cornerstone Pediatric Profit Sharing Plan and as representative of a class of all other similarly situated individual account retirement plans,       )
)
)
)
)
        Plaintiff,       )       C.A. No. 1:17-cv-01289-GMS
)
    v.       )
)
VOYA FINANCIAL, INC. and VOYA RETIREMENT INSURANCE AND ANNUITY COMPANY,       )
)
)
)
        Defendants.       )

## OPENING BRIEF IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Patricia R. Urban (#4011)
PINCKNEY, WEIDINGER, URBAN
  & JOYCE LLC
3911 Kennett Pike, Suite 210
Greenville, DE 19807
(302) 501-1526
purban@pwujlaw.com

James F. Jorden (*pro hac vice*)
Waldemar J. Pflepsen, Jr. (*pro hac vice*)
W. Glenn Merten (*pro hac vice*)
CARLTON FIELDS JORDEN BURT, P.A.
1025 Thomas Jefferson Street, NW
Suite 400 West
Washington, DC 20007
(202) 965-8100
jjorden@carltonfields.com
wpflepsen@carltonfields.com
gmerten@carltonfields.com

*Attorneys for Defendants*

Dated: February 8, 2018

## TABLE OF CONTENTS

**Page(s)**

NATURE AND STAGE OF THE PROCEEDINGS ......................................................1

SUMMARY OF THE ARGUMENT ............................................................................2

STATEMENT OF FACTS - BACKGROUND AND ALLEGATIONS ......................2

APPLICABLE LEGAL STANDARDS .......................................................................4

ARGUMENT ...............................................................................................................5

I.  The Complaint Should Be Dismissed Because Of Improper Collective
    Pleading.............................................................................................................5

II. Count I Fails To State A Claim For Relief .......................................................6

    A.  Plaintiff Has Not Plausibly Alleged That Voya Acted As An
        ERISA Fiduciary In Setting Its Compensation ...................................... 6

    B.  Plaintiff Has Not Plausibly Alleged VRIAC's Compensation Is
        Unreasonable........................................................................................... 8

III. Count II Fails To State A Claim For Relief ....................................................10

    A.  Preparing Disclosures Prescribed By Rule 404a-5 Is A Purely
        Ministerial Function – Not A Fiduciary Function ................................ 10

    B.  Plaintiff's Allegation That The Rule 404a-5 Disclosures Were
        Materially False And Misleading Is Refuted By The Disclosures
        Provided ................................................................................................ 11

IV. Plaintiff Has Not Plausibly Alleged A Claim For Co-Fiduciary Liability .......13

V.  Count IV Fails To State A Claim For Relief ...................................................14

    A.  Plaintiff Has Not Plausibly Alleged That Either Voya Defendant
        Was A Party-In-Interest With Respect To Plaintiff's Claims............... 15

    B.  Plaintiff Has Not Plausibly Alleged That Any Plan Sponsor Had
        Knowledge Of The Facts Satisfying The Elements Of A Section
        406(a)(1)(C) Transaction ...................................................................... 17

    C.  Plaintiff Has Not Plausibly Alleged That Voya Had Knowledge Of
        Circumstances That Rendered Its Negotiated Fee Arrangements
        Unlawful ................................................................................................ 18

i

D.      Asset-Based Fees Do Not *Per Se* Violate ERISA Section 406(a)(1)(C) ........................................................................................................ 18

VI.    Plaintiff Seeks Relief Not Available Under ERISA Section 502(a)(3) ............................19

CONCLUSION .....................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................4, 6, 8, 18

*Askew v. R.L. Reppert, Inc.*,
    902 F. Supp. 2d 676 (E.D. Pa. 2012) ......................................................14

*Atuahene v. City of Hartford*,
    10 F. App'x 33 (2d Cir. 2001) ...................................................................5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................................4, 5

*Brotherston v. Putnam Invs., LLC*,
    2017 WL 1196648 (D. Mass. Mar. 30, 2017)...........................................8

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997)....................................................................3

*Caponegro v. U.S. Dep't of Hous. and Urban Dev.*,
    2017 WL 2197124 (D. N.J. May 18, 2017) .............................................5

*CIGNA Corp. v. Amara*,
    563 U.S. 421 (2011)................................................................................20

*Cunningham v. Cornell University*,
    2017 WL 4358769 (S.D.N.Y. Sept. 29, 2017)...................................16, 17

*Danza v. Fid. Mgmt. Tr. Co.*,
    533 F. App'x 120 (3d Cir. 2013) .......................................................15, 16

*The Depot, Inc. v Caring for Montanans Inc.*,
    2017 WL 3687339 (D. Mont. Feb. 14, 2017) .........................................19

*F.H. Krear & Co. v. Nineteen Named Trs.*,
    810 F.2d 1250 (2d Cir. 1987)....................................................................7

*Harris Trust and Savings Bank v. Salomon Smith Barney, Inc.*,
    530 U.S. 238 (2000).......................................................................14, 15, 18

*Hecker v. Deere & Co.*,
    556 F.3d 575 (7th Cir. 2009) ............................................................7, 8, 13

*In re Ins. Brokerage Antitrust Litig.*,
    618 F.3d 300 (3d Cir. 2010)............................................................................................4

*Insinga v. United of Omaha Life Ins. Co.*,
    2017 WL 6884626 (D. Neb. Oct. 26, 2017) ...............................................................7, 20

*Jacobs v. Verizon Communications Inc.*,
    Case No. 1:16-cv-1082-PGG, Slip Op. at 20 (S.D.N.Y. Sept. 28, 2017) ...................10, 12, 13

*Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A.)*,
    768 F.3d 284 (3d Cir. 2014)..........................................................................................6, 7

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992).......................................................................................................13

*Marks v. Indep. Blue Cross*,
    71 F. Supp. 2d 432 (E.D. Pa. 1999) ..............................................................................11

*McCaffree Fin. Corp. v. Principal Life Ins. Co.*,
    811 F.3d 998 (8th Cir. 2016) ...........................................................................................7

*Meiners v. Wells Fargo & Co.*,
    2017 WL 2303968 (D. Minn. May 25, 2017)...................................................................8

*Montanile v. Bd. of Trs. of the Nat'l Elevator Indus. Health Benefit Plan*,
    136 S. Ct. 651 (2016).....................................................................................................19

*Neology, Inc. v. Kapsch Trafficcom IVHS, Inc.*,
    2014 WL 4675316 (D. Del. Sept. 19, 2014)....................................................................5

*Patrico v. Voya Financial, Inc.*,
    2017 WL 2684065 (S.D.N.Y. June 20, 2017) .............................................................7, 17

*Pegram v. Herdrich*,
    530 U.S. 211 (2000).....................................................................................................6, 7

*Reich v. Compton*,
    57 F.3d 270 (3d Cir. 1995).........................................................................................14, 17

*Renfro v. Unisys Corp.*,
    671 F.3d 314 (3d Cir. 2011).................................................................................4, 7, 13, 15

*Sacerdote v. New York University*,
    2017 WL 3701482 (S.D.N.Y. Aug. 25, 2017)............................................................16, 17

*Shaw v. Hous. Auth. of Camden*,
    2012 WL 3283402 (D. N.J. Aug. 10, 2012) .....................................................................5

*Sweda v. Univ. of Penn.*,
   2017 WL 4179752 (E.D. Pa. Sept. 21, 2017) ........................................................9, 16, 17, 19

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007).......................................................................................................3, 8

*Terraza v. Safeway Inc.*,
   241 F. Supp. 3d 1057, 1073 (N.D. Cal. 2017) ...............................................................12, 13

*Tibble v. Edison Int'l*,
   135 S. Ct. 1823 (2015)...........................................................................................................9

*Tussey v. ABB, Inc.*,
   2012 WL 1113291 (W.D. Mo. Mar. 31, 2012), *rev'd in part on other grounds*,
   746 F.3d 327 (8th Cir. 2014) ................................................................................................10

*Urakhchin v Allianz Asset Mgmt. of America, LP*,
   2016 WL 4507117 (C.D. Ca. Aug. 5, 2016)..........................................................................20

*White v. Chevron Corp.*,
   2017 WL 2352137 (N.D. Cal. May 31, 2017) .......................................................................18

*Wood v. Prudential Ret. Ins. and Annuity Co.*,
   2016 WL 5940946 (D. Conn. Sept. 19, 2016) .......................................................................19

**Statutes**

29 U.S.C. § 1002(21)(A)...............................................................................................................6

**Other Authorities**

29 C.F.R. § 2509.75-8, D-2 ...................................................................................................10, 11

29 C.F.R.§ 2550.404a-5 ..................................................................................................................1

29 C.F.R. § 2550.404a-5(b) .........................................................................................................10

29 C.F.R. § 2550.404a-5(d)(1)(ii)(2) ...........................................................................................12

29 C.F.R. § 2550.404a-5(e)(2)......................................................................................................12

29 C.F.R. §§ 2550.404a-5(h)(ii)(C) .............................................................................................12

75 Fed. Reg. 64,910, n.8 (Oct. 20, 2010).....................................................................................13

81 Fed. Reg. 21,029 (April 8, 2016) ...............................................................................................8

DOL Field Assistance Bulletin No. 2012-02, 2012 WL 1865026 (EBSA), Q&A
   Q-33 ........................................................................................................................................12

## NATURE AND STAGE OF THE PROCEEDINGS

This a putative class action involving compensation that Defendant Voya Retirement Insurance and Annuity Company ("VRIAC") receives as a retirement plan service provider under thousands of separate contractual arrangements. Each of those arrangements was negotiated and agreed upon by the plan fiduciary responsible for selecting and monitoring the plan's service providers. Plaintiff, as representative of and on behalf of the Cornerstone Pediatric Profit Sharing Plan (the "Cornerstone Plan") and other similarly situated plans (the "Plans"), contends that VRIAC and Voya Financial, Inc. (together "Voya") violated and knowingly participated in violations of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and 29 C.F.R.§ 2550.404a-5 promulgated thereunder ("Rule 404a-5"). Specifically, Plaintiff alleges that Defendants received excessive and unreasonable asset-based compensation for recordkeeping and administrative services, and concealed that fact from plan participants. Plaintiff brings this action under ERISA § 502(a)(3) seeking to hold Voya liable for "disgorgement" and "all losses to the Plans resulting from the excessive fees."

In a tacit admission that her original complaint was defective, Plaintiff filed an amended complaint rather than respond to Defendants' motion to dismiss. D.E. 18-19. The amended complaint, D.E. 22 (the "Complaint"), adds six pages and 22 paragraphs of text, but fails to provide any additional support for Plaintiff's claims. The new allegations repackage previously asserted points without providing either support for Plaintiff's legally defective theories or the additional facts necessary to state plausible claims, and in some instances make the grounds for dismissal even more clear.

## SUMMARY OF THE ARGUMENT

Plaintiff's claims, even after amendment, suffer from several fundamental flaws.  As a threshold matter, the Complaint should be dismissed in its entirety because Plaintiff asserts all allegations and claims collectively against VRIAC and Voya Financial, and fails to differentiate among Defendants in any way.  Moreover, Plaintiff has not – and cannot – plausibly allege that either Defendant acted as an ERISA fiduciary with respect to its compensation, and the entire Complaint is just an attempt to circumvent the long-established rule that service providers are not fiduciaries with respect to the terms of their contracts negotiated and approved by the responsible plan fiduciary.  Plaintiff also only seeks relief that is not available under ERISA § 502(a)(3).

Each cause of action also fails for independent reasons.  Count I fails because Plaintiff has not plausibly alleged that VRIAC's compensation was unreasonable.  Count II fails because Plaintiff's allegations regarding the Rule 404a-5 Disclosures are refuted by the Plan documents that form the basis of the Complaint.  Count III fails because Plaintiff has not plausibly alleged that either Defendant breached a fiduciary duty owed to Plaintiff.  Finally, Count IV fails because Plaintiff has not adequately pleaded facts constituting a violation of ERISA § 406(a)(1)(C).  The Complaint should be dismissed in its entirety.

## STATEMENT OF FACTS - BACKGROUND AND ALLEGATIONS

VRIAC provides products and services to retirement plans and participants; the Cornerstone Plan is a participant-directed individual account plan as defined by ERISA.  In 2003, the trustees of the Cornerstone Plan purchased a group annuity contract (the "Contract") from VRIAC as a funding vehicle for the Cornerstone Plan.[1]  Participants are permitted to direct

---

[1] Defendants attach four Exhibits:  as **Exhibit A**, the Contract with the Cornerstone Plan trustees and VRIAC referenced in the Complaint (Compl. ¶ 31); as **Exhibit B**, one of Plaintiff's account statements containing disclosures she puts at issue (Compl. ¶¶ 98-105); as **Exhibit C**, the annual Rule 404a-5 Disclosures cited by the Complaint (Compl. ¶¶ 50-65); and as **Exhibit D**, a

the investment of their individual plan accounts among the investment options available under the Contract, including investment options that invest in shares of a single underlying mutual fund. *See* Contract §§ 1.20, 3.02, 5.01. The relevant investment options constitute investments in a separate account maintained by VRIAC that, in turn, invests in the underlying mutual funds. *See* Contract §§ 1.28, 3.02, 4.01, 4.04. At the end of 2015, the Cornerstone Plan had 19 participants and $2,797,616 in assets. Compl. ¶ 1. The Contract permits VRIAC to deduct a Daily Asset Charge ("DAC") from the separate account as compensation for its "mortality and expense risks." *See* Contract §§ Specifications, 4.09. The DAC is determined by plan and fund-specific factors, and consists of both a base amount and related adjustments. *Id.*

Plaintiff is allegedly a participant in the Cornerstone Plan.[2] Like other plan participants, Plaintiff receives periodic information from the plan sponsor regarding the Cornerstone Plan and its investment options, including quarterly account statements and annual disclosures that include the information mandated by Rule 404a-5. Although the Complaint alleges that Voya concealed the DAC fees from the Cornerstone Plan participants, Compl. ¶ 7, the quarterly account statements list the DAC for each fund option and disclose that "some of the plan's administrative expenses … were paid from the total annual operating expenses … of the plan's designated investment alternatives[.]" *See* Account Statement, Exhibit B. Similarly, while Plaintiff alleges that the annual Rule 404a-5 Disclosures (Exhibit C) were materially false and misleading, these allegations are premised on the mistaken assumption that all of the relevant plan investment options "are mutual funds." Compl. ¶ 57. Finally, in support of her assertion that Voya charges

---

purported plan fee survey referenced in the Complaint (Compl. ¶ 5). Each Exhibit is "integral to or explicitly relied upon in the [C]omplaint," and the Court may consider them in connection with this Motion. *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

[2] While not necessary for the Court to address, Defendants reserve all arguments relating to the facts that Plaintiff is no longer a participant in the Cornerstone Plan and the Cornerstone Plan no longer uses Voya as a service provider.

excessive fees, Plaintiff compares the $2.8 million, 19-participant Cornerstone Plan to the aggregated results from an investment consulting firm survey of fees for defined contribution plans that dwarf the Cornerstone Plan in asset size and in the number of participants.  Compl. ¶ 5; 2015 NEPC Survey (Exhibit D).

Based on these mistaken assumptions and spurious comparisons, Plaintiff asserts four claims against Defendants:

(i)   Voya breached its fiduciary duty under ERISA § 404(a)(1) by charging excessive recordkeeping fees.  Compl. ¶¶ 86-90 (Count I).

(ii)  Voya breached its fiduciary duty under ERISA § 404(a)(1) by preparing and distributing false and misleading Rule 404a-5 disclosures.  Compl. ¶¶ 91-97 (Count II).

(iii) Cornerstone and other Plan sponsors breached their fiduciary duties under ERISA § 404(a)(1) by paying Voya excessive fees and distributing false and misleading Rule 404a-5 Disclosures, and  the undifferentiated "VOYA" is equally liable for those breaches as a co-fiduciary under ERISA § 405(a)(2).  Compl. ¶¶ 98-105 (Count III).

(iv)  Voya is liable as a non-fiduciary under ERISA § 502(a)(3) for disgorgement of the excessive fees it received in violation of ERISA prohibited transaction § 406(a)(1)(C) and for all losses to the Plans resulting from those fees.  Compl. ¶¶ 106-118 (Count IV).

## APPLICABLE LEGAL STANDARDS

"[C]ourts evaluating the viability of a complaint under Rule 12(b)(6) must look beyond conclusory statements and determine whether the complaint's well-pled factual allegations, taken as true, are 'enough to raise a right to relief above the speculative level.'"  *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 319 (3d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, n.3 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court "must examine the context of a claim, including the underlying substantive law, in order to assess its plausibility." *Renfro v. Unisys Corp.,* 671 F.3d 314, 321 (3d Cir. 2011).

**ARGUMENT**

**I.     The Complaint Should Be Dismissed Because Of Improper Collective Pleading**

A defendant must be given fair notice of what the claim is and the grounds upon which it rests. *Twombly*, 550 U.S. at 555 (citations and quotations omitted). A complaint that lumps all defendants together in each claim without providing any factual basis to distinguish their conduct fails to satisfy this standard. *Neology, Inc. v. Kapsch Trafficcom IVHS, Inc.*, 2014 WL 4675316, at *4 (D. Del. Sept. 19, 2014) (citing *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001). Consequently, to satisfy Rule 8, "[a] plaintiff must specify which defendants performed which acts." *Caponegro v. U.S. Dep't of Hous. and Urban Dev.*, 2017 WL 2197124, at *4 (D. N.J. May 18, 2017) (citations and quotations omitted); *Shaw v. Hous. Auth. of Camden*, 2012 WL 3283402, at *2 (D. N.J. Aug. 10, 2012) ("Even under the most liberal notice pleading requirements of Rule 8(a), a plaintiff must differentiate between defendants").

Rather than identifying particular conduct on the part of each Defendant, Plaintiff collectively defines both Defendants as "VOYA" in the preamble to the Complaint and afterwards levies undifferentiated factual assertions and legal conclusions against the amalgamated Defendants. *See*, *inter alia*, Compl. ¶¶ 29-33 (alleging "VOYA" is a plan fiduciary); 50 (alleging "VOYA" provided disclosures to Plan participants); 66 (alleging "VOYA" receives different types of compensation); 87 (alleging "VOYA is a fiduciary . . . because VOYA had discretionary authority or discretionary responsibility in setting its compensation"). At no point does Plaintiff distinguish between Voya Financial and VRIAC, or attribute purported actions to a specific individual defendant. *See generally* Compl.[3]

_____

[3] The lone amendment Plaintiff made to address her defective collective pleading is to preemptively claim that "the Voya entities are functionally inseparable." Compl. ¶ 23. Her own allegations demonstrate this is incorrect. The Complaint repeatedly refers to the group annuity

Accordingly, the Complaint fails to "plead[] factual content that allows the court to draw the reasonable inference" that any particular defendant "is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, and must be dismissed.[4]

## II.   Count I Fails To State A Claim For Relief

### A.   Plaintiff Has Not Plausibly Alleged That Voya Acted As An ERISA Fiduciary In Setting Its Compensation

Under ERISA, a party not specifically named as a fiduciary of a plan owes a fiduciary duty only "to the extent" that party (i) exercises any discretionary authority or control over management of the plan or its assets; (ii) offers "investment advice for a fee" to plan members; or (iii) has "discretionary authority" over plan "administration."  29 U.S.C. § 1002(21)(A); *see Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A.)*, 768 F.3d 284, 291 (3d Cir. 2014).  Thus, courts assessing claims under ERISA must ask "whether [a] person was acting as a fiduciary . . . *when taking the action subject to complaint*."  *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000) (emphasis supplied).  Here, because neither Defendant is a named fiduciary of the Cornerstone Plan, Plaintiff must plead facts demonstrating that each of them, independently, acted as a fiduciary "when taking the action subject to complaint."  *Id.*  Plaintiff initially asserted Defendants are fiduciaries because they "had discretionary authority or discretionary responsibility in setting its compensation by determining the 'reasonable' amount VOYA would add to the operating expenses of the mutual funds" and now has added assertions that "VOYA used its discretion to determine which investments would be made available to the Plans' participants for the cost,"  Compl. ¶ 87, and Voya "monitor[s]" the fees charged.  *Id.* ¶ 32.

---

"Contract" to establish a factual predicate for all her claims.  *See, e.g.*, Compl. ¶¶ 31-32, 34, 37-38.  VRIAC is a party to that Contract; Voya Financial is not.  *See* Exhibit A.

[4] To the extent this Brief uses "Voya," it refers to both Defendants, unless another intention is clear.  Defendants' limited use of the collective reference should not be construed as an admission that Plaintiff's collective pleading satisfies Rule 8(a).  With respect to the claims asserted, there is no dispute that VRIAC is the service provider, and Voya Financial is not.

A service provider "does not act as a fiduciary with respect to the terms in the service agreement if it does not control the named fiduciary's negotiation and approval of those terms." *Renfro*, 671 F.3d at 324 (quoting *Hecker v. Deere & Co.*, 556 F.3d 575, 583 (7th Cir. 2009)); *accord McCaffree Fin. Corp. v. Principal Life Ins. Co.*, 811 F.3d 998, 1003 (8th Cir. 2016). "When a service provider and a plan trustee negotiate at arm's length over the terms of their agreement, discretionary control over plan management lies not with the service provider but with the trustee, who decides whether to agree to the service provider's terms." *Santomenno*, 768 F.3d at 293. As a result, "[w]hen a person who has no relationship to an ERISA plan is negotiating a contract with that plan, he . . . is not an ERISA fiduciary with respect to the terms of the agreement for his compensation." *Renfro,* 671 F.3d at 324 (quoting *F.H. Krear & Co. v. Nineteen Named Trs.,* 810 F.2d 1250, 1259 (2d Cir. 1987)); *see also Patrico v. Voya Financial, Inc.,* 2017 WL 2684065, at *3 (S.D.N.Y. June 20, 2017).

Here, the Contract explicitly describes the DAC fees about which Plaintiff complains which were negotiated and agreed to by the Cornerstone Plan trustees and VRIAC. *See* Contract Specifications and § 4.09. Moreover, fiduciary status for unnamed fiduciaries must be tethered to "the action subject to complaint." *Pegram*, 530 U.S. at 226. In Plaintiff's amendments, she does not assert any claim in connection with either the selection of the investment options in the Cornerstone Plan, or the monitoring of any fees charged, and offers no nexus between such alleged fiduciary status and the claims she does assert. *See Santomenno*, 768 F.3d at 296 (holding that absent a nexus between alleged fiduciary status and the challenged conduct, there can be no fiduciary liability). Nor does Plaintiff allege that Voya *actually* changed the investment options available, merely that it had the ability to do so. *Insinga v. United of Omaha Life Ins. Co.*, 2017 WL 6884626, at *4 (D. Neb. Oct. 26, 2017) ("ERISA requires that a person

7

exercise discretionary authority, not merely possess it.").  Under these circumstances, Plaintiff alleges no facts from which it can be plausibly inferred that either Defendant was acting as a fiduciary with respect to its own compensation.  Accordingly, Count I must be dismissed.

### B.     Plaintiff Has Not Plausibly Alleged VRIAC's Compensation Is Unreasonable

Count I, as originally pled and subsequently modified, also fails because Plaintiff has not plausibly alleged the compensation Voya received was unreasonable.  Plaintiff alleges that, pursuant to ERISA Section 408(b)(2) which provides an exemption for transactions otherwise prohibited by ERISA Section 406(a), Voya may receive "no more than reasonable compensation" for "its" services.  *See* Compl. ¶¶ 89, 110.  "Reasonableness," however, is not judged by vague, unsupported *post facto* assertions that fees could have been lower, but must be supported by factual allegations such as a "meaningful benchmark against which [the service provider's] fees can be compared."  *Meiners v. Wells Fargo & Co.*, 2017 WL 2303968, at *3 (D. Minn. May 25, 2017).  According to the Department of Labor, "[a]t bottom, the [reasonableness] standard simply requires that compensation not be excessive, *as measured by the market value of the particular services, rights, and benefits*[.]"  81 Fed. Reg. 21,029 (April 8, 2016) (emphasis supplied); *see also Brotherston v. Putnam Invs., LLC*, 2017 WL 1196648, at *6 (D. Mass. Mar. 30, 2017) (citing *Hecker*, 556 F.3d at 586, and holding that fees should be set against the "backdrop of market competition").

The market for retirement plan products and services is presumptively open and competitive.  *See Iqbal*, 556 U.S. at 679 ("[d]etermining whether a complaint states a plausible claim [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").  Plaintiff does not allege otherwise.  Thus, the alleged 47,000 fee arrangements Plaintiff challenges actually belie Plaintiff's claim as they show wide-spread market acceptance of Defendants' products and services, which would not be the case if

8

Defendants' compensation were truly unreasonable.  Compl. ¶¶ 20, 113.  Likewise, Plaintiff's vague allegations regarding the allegedly similar but impliedly *low-cost brokerage services* do not render Plaintiff's claim any more plausible, *id.* ¶¶ 40, 42, because, *inter alia*, there are no allegations as to the actual fees or costs for such services upon which any plausible inference can be drawn as to the reasonableness of Defendants' fees.

In order for thousands of agreed-upon fee arrangements to plausibly show any sort of fiduciary misconduct, Plaintiff would have to allege something more – something to show that those arrangements do not reflect the market value of Defendants' services.  *See Sweda v. Univ. of Penn.,* 2017 WL 4179752 at *8 (E.D. Pa. Sept. 21, 2017) ("plaintiffs need something more than a claim that there may be (or even are) cheaper options available").  Despite Plaintiff's amendment, nothing close to that is alleged.  Aside from vague assertions as to allegedly similar brokerage services, misdirected hyperbole regarding the DAC and Voya's stable value fund, and unsupported speculation that other funds charge less, the most Plaintiff alleges is that Voya concealed its asset-based fees from plan participants.  But it is the plan sponsors, not participants, who are responsible for selecting and monitoring plan service providers.  Moreover, there are no allegations that the DAC was concealed from the Cornerstone Plan trustees, nor could there be as the DAC is explicitly described in the Contract agreed to by the Cornerstone Plan trustees.

Nor does Plaintiff's reference to the NEPC Survey render her claim any less implausible.  The survey is plainly not representative of the small plan market upon which Plaintiff's claim is based, as the surveyed plans dwarf the $2.8 million Cornerstone Plan both in asset size and number of participants.  Indeed, it has been judicially acknowledged that larger plans are able to claim cost-efficiencies that smaller plans cannot.  *See Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1825 (2015) (acknowledging, in an "excessive fee" case, that larger plans may take advantage of

lower rates where small-scale investors cannot); *Tussey v. ABB, Inc.,* 2012 WL 1113291, at *12 (W.D. Mo. Mar. 31, 2012) (noting that "administration and recordkeeping fees are generally lower for larger plans"), *rev'd in part on other grounds*, 746 F.3d 327 (8th Cir. 2014).  Nothing in this inapposite survey supports the conclusion that the thousands of fee arrangements challenged by Plaintiff are unreasonable.  Accordingly, Count I must be dismissed.

## III.     Count II Fails To State A Claim For Relief

Count II, which alleges that Voya breached its fiduciary duties by preparing and distributing false and misleading Rule 404a-5 disclosures, fails because Plaintiff does not plausibly allege that either Voya Defendant acted as an ERISA fiduciary with respect to the Rule 404a-5 disclosures or that those disclosures were materially false and misleading.

### A.     Preparing Disclosures Prescribed By Rule 404a-5 Is A Purely Ministerial Function – Not A Fiduciary Function

Plaintiff alleges that Voya is an ERISA fiduciary because it "had discretionary authority or discretionary responsibility in preparing the administrative and fund fee disclosures required by [Rule 404a-5]."  Compl. ¶ 92.  Rule 404a-5 "outlin[es] the disclosure requirements that ERISA plan administrators must follow to comply with their fiduciary duties," *Jacobs v. Verizon Communications Inc.,* Case No. 1:16-cv-1082-PGG, Slip Op. at 20 (S.D.N.Y. Sept. 28, 2017), (Dkt. No. 70).  In other words, it is the *plan administrator's* responsibility.  *See* 29 C.F.R. § 2550.404a-5(b) (imposing on the "plan administrator" the duty to comply with the rule's disclosure requirements).  Neither Voya Defendant is or is alleged to be a plan administrator.

Moreover, according to Department of Labor regulations, "a person who performs purely ministerial functions . . . for an employee benefit plan within a framework of policies, interpretations, rules, practices and procedures made by other persons is not a fiduciary[.]"  29 C.F.R. § 2509.75-8, D-2.  Purely ministerial functions include "[p]reparation of employee

communications material" and "advising participants of their rights and options under the plan." *Id.* Thus, based on the allegations, in preparing and distributing the disclosures prescribed by Rule 404a-5, Voya did no more than perform purely ministerial functions "within a framework . . . made by other persons." *See Marks v. Indep. Blue Cross*, 71 F. Supp. 2d 432 (E.D. Pa. 1999) (creating and providing notifications to plan beneficiaries when plan asks for them are purely ministerial functions performed "within a framework . . . made by other persons"). Accordingly, Count II must be dismissed.

### B.   Plaintiff's Allegation That The Rule 404a-5 Disclosures Were Materially False And Misleading Is Refuted By The Disclosures Provided

Count II also fails because Plaintiff is unable plausibly to allege that the Rule 404a-5 Disclosures were materially false and misleading. Plaintiff alleges that the Disclosures:

(i)   Did not accurately report the mutual fund operating costs as disclosed in the fund prospectuses, but instead inflated the fund operating expenses by adding VOYA's asset based administrative fee of .67% to 1.86% to the fund operating expenses;

(ii)   Failed to disclose VOYA was receiving an asset based administrative fee of 0.67% to 1.86% of the Cornerstone Plan and other Plan assets; and

(iii)   Stated the administrative fee was $15 per participant when in fact VOYA charged an asset based fee in excess of 1%.

Compl. ¶¶ 60, 62, 94. Plaintiff also claims Voya "concealed the true amount of its fees" from plan participants, *id.* ¶ 7, and in new allegations, that Voya provided the required information in a manner Plaintiff deems not as user-friendly as she would prefer – in essence, that the disclosures are hiding in plain sight. *Id.* ¶¶ 46, 50-55.

As to the allegation that VOYA "did not accurately report the mutual fund operating costs", Plaintiff's claim is premised on the mistaken belief that all of the relevant plan investment options "are mutual funds," *id.* ¶¶ 57, 94. In fact, the relevant plan investment options constitute investments in accounts of a group annuity contract, each of which, in turn, invests in an underlying mutual fund. *See* Contract §§ 1.28, 3.02, 4.01, 4.04. Consequently, the underlying

"mutual fund operating costs" are, correctly, included as part of the gross operating expenses of each separate account—which also include the DAC—as required under Rule 404a-5.[5]

Contrary to Plaintiff's allegation that Voya failed to disclose the administrative fee it actually received, the only asset charge imposed by Voya *is* the DAC, which is disclosed to the Plan and participants as evidenced by Plaintiff's own quarterly account statements reflecting the DAC for each Cornerstone Plan account investment option.  *See* Account Statement at 7-8 (disclosing the DAC by plan investment option).  Finally, neither the quarterly statements nor the Rule 404a-5 Disclosures state that the $15 per participant fee includes all plan administrative fees and expenses or that there are no asset-based plan administrative fees or expenses.[6]

To the extent Plaintiff is alleging that the amount of the DAC must be separately disclosed in the Rule 404a-5 Disclosures, this claim fails because courts have held that Rule 404a-5 does not require disclosure of the portion of a plan investment option's gross expense ratio being applied to pay recordkeeping expenses.  *Jacobs*, Dkt. No. 70 at 23; *Terraza v. Safeway Inc.,* 241 F. Supp. 3d 1057, 1073 (N.D. Cal. 2017).   More generally, courts have recognized that "[t]he total fee, not the internal, post-collection distribution of the fee, is the critical figure for someone interested in the cost of including a certain investment in her portfolio

---

[5] *See* 29 C.F.R. §§ 2550.404a-5(d)(1)(iv)(2), (h)(5)(ii)(C) (requiring the "expense ratio" for each plan investment "alternative" to include, *inter alia*, "[a]ny ... fees or expenses ... that reduce the alternative's rate of return (e.g., … recordkeeping fees, administrative fees, separate account expenses, mortality and expense risk fees)"); DOL Field Assistance Bulletin No. 2012-02, 2012 WL 1865026 (EBSA), Q&A Q-33, (plan administrative expenses paid by liquidating shares of underlying mutual fund held by plan investment option "must be reflected in the designated investment alternative's total annual operating expenses").

[6] Pursuant to Rule 404a-5(c)(2)(ii), Plaintiff's quarterly statement discloses that "[i]n addition to [this fee], some of the plan's administrative expenses for the preceding quarter were paid from the total annual operating expenses of one or more of the plan's designated investment alternatives (e.g. through revenue sharing arrangements, 12b-1 fees, sub-transfer agent fees)." *See* Account Statement, Exhibit B, at 4.  Despite Plaintiff's newfound dissatisfaction with this method of disclosure, *see* Compl. ¶ 53, Rule 404a-5 expressly authorizes the use of participant quarterly statements for the disclosure of this information.  *See* 29 C.F.R. § 2550.404a-5(e)(2).

and the net value of that investment." *Hecker*, 556 F.3d at 586.   "Information regarding [t]he later distribution of the fees … is not information the participants need[] to know to keep from acting to their detriment, and thus [is] not material." *Jacobs*, Dkt. No. 70 at 24 (quoting *Hecker*, 556 F.3d at 586) (internal quotations omitted).   Similarly, in the preamble to the final rulemaking adopting Rule 404a-5, the Department of Labor agreed that "such a breakdown is not necessary, or particularly useful, to participants and beneficiaries; the final rule therefore also allows for 'aggregate' disclosure of administrative expenses, as proposed."   75 Fed. Reg. 64,910, n.8 (Oct. 20, 2010); *see also Terraza*, 241 F. Supp. 3d at 1073 ("fiduciaries are [not] required to disclose the 'breakdown' of the gross expense ratio associated with each investment option").   Accordingly, Count II must be dismissed.[7]

## IV.   Plaintiff Has Not Plausibly Alleged A Claim For Co-Fiduciary Liability

Plaintiff alleges that the Cornerstone Plan (and others) breached their fiduciary duties by paying Voya excessive recordkeeping fees and by distributing false and misleading participant fee disclosures and that Defendants are equally liable for those breaches as a co-fiduciary under ERISA Section 405(a)(2).   Compl. ¶¶ 103-05.   In pertinent part, Section 405(a)(2) provides:

> a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances: . . . (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach;

As a predicate to liability, Plaintiff must plausibly allege that *each* Voya Defendant breached duties owed in its role as a fiduciary.   *Renfro*, 671 F.3d at 324, n.5.   As discussed above in Sections I through III, Plaintiff has not plausibly alleged that *either* Voya Defendant acted as a

---

[7] Plaintiff also lacks constitutional standing to bring Count II because there is no causal connection between the alleged misconduct (misleading disclosures) and the alleged harm (excessive fees) since the plan sponsor, not plan participants, is responsible for hiring and monitoring plan service providers. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) ("there must be a causal connection between the injury and the conduct complained of").

fiduciary with respect to its compensation, the Rule 404a-5 Disclosures or any other actions, or that the compensation was excessive or the Rule 404a-5 Disclosures were false and misleading.

Moreover, the Complaint is devoid of any non-conclusory allegations from which it can be plausibly inferred that the Cornerstone Plan and other plan sponsors acted imprudently or disloyally in hiring or paying Voya.  *See Askew v. R.L. Reppert, Inc*., 902 F. Supp. 2d 676, 686 (E.D. Pa. 2012) (to state breach of fiduciary duty claim "plaintiff must aver some acts or omissions by an ERISA fiduciary in violation of the fiduciary's duties"); *Reich v. Compton*, 57 F.3d 270, 291 (3d Cir. 1995) ("trustees violate their duty of loyalty when they act in the interests of the plan sponsor rather than with an eye single to the interests of the participants and beneficiaries of the plan") (internal quotations and citations omitted).  Even after the amendment, Plaintiff makes only conclusory allegations that the plan sponsors knew or should have known that Voya's fees were excessive, and no allegations that the plan sponsors acted in their own interests, or that their process for selecting or monitoring Voya was flawed.  The Complaint also fails to plausibly allege a nexus between Voya's alleged fiduciary misconduct and the alleged fiduciary misconduct of any plan sponsor.  *See Askew,* 902 F. Supp. 2d at 687 ("to pursue a claim for liability against one fiduciary based upon the breach by a second co-fiduciary under [Section 404(a)(2)], a plaintiff must aver sufficient factual matter to support a reasonable inference that that the first fiduciary's breach caused his co-fiduciary to also commit a breach.").  Accordingly, Count III must be dismissed.

## V.      Count IV Fails To State A Claim For Relief

To state a claim under ERISA prohibited transaction § 406(a)(1)(C) and the Supreme Court's decision in *Harris Trust and Savings Bank v. Salomon Smith Barney, Inc.* for "appropriate equitable relief" against non-fiduciaries engaging in prohibited transactions,

> the transferee must be demonstrated to have had actual or constructive knowledge
> of the circumstances that rendered the transaction unlawful. Those circumstances,
> in turn, involve a showing that the *plan fiduciary*, with actual or constructive
> knowledge of the facts satisfying the elements of a § 406(a) transaction, caused
> the plan to engage in the transaction.

530 U.S. 238, 251 (2000) (emphasis in original).[8] Section 406(a)(1)(C) provides, in pertinent part, that "[e]xcept as provided in [ERISA § 408(b)(2)] . . . [a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . furnishing of goods, services, or facilities between the plan and a party in interest." Count IV fails because Plaintiff has not plausibly alleged that Voya was a party-in-interest at the time the plan sponsor agreed to its compensation, that a plan fiduciary caused the plan to engage in the alleged violation with the requisite knowledge, or that Voya itself had the requisite knowledge.

### A. Plaintiff Has Not Plausibly Alleged That Either Voya Defendant Was A Party-In-Interest With Respect To Plaintiff's Claims

Plaintiff must first plausibly allege that a Voya Defendant "is a party in interest that engaged in one of the statutorily prohibited transactions." *Danza v. Fid. Mgmt. Tr. Co.*, 533 F. App'x 120, 125 (3d Cir. 2013). In *Danza*, a plan participant sued two related service providers for, *inter alia*, allegedly violating § 406(a)(1)(C) by charging participants an excessive service fee for reviewing domestic relations orders. *Id.* at 122. In rejecting the participant's argument that a prohibited transaction occurred when the plan sponsor caused the plan to hire and pay the service provider, the court reasoned:

> While [the service provider] is currently a party in interest as a service provider to
> the plan, it was not "providing services" and was not a fiduciary *when the [service
> contract] was signed, so that transaction did not fall within a prohibited category*.

> Moreover, "Congress defined 'party in interest' to encompass those entities that a
> fiduciary might be inclined to favor at the expense of the plan's beneficiaries."
> Here, there is no allegation that [plan sponsor] had a prior relationship with [the

---

[8] Section 502(a)(3) "does not authorize suit against nonfiduciaries charged solely with participating in a fiduciary breach." *Renfro*, 671 F.3d at 325 (internal quotations omitted).

> service provider] and there is no fact from which this Court could infer that they
> showed favoritism to each other or did anything other than engage in arms-length
> negotiation.  Negotiation between such unaffiliated parties does not fall into the
> category of transactions that Section 406(a) was meant to prevent.

*Id.* at 125-26 (citations omitted; emphasis supplied).

Three separate district courts, including one in this Circuit, have rejected closely analogous ERISA prohibited transaction claims for similar reasons.  In *Sweda*, for example, plaintiffs argued that the University's contracts with TIAA-CREF and Vanguard for administrative services constituted a prohibited transaction under § 406(a) of ERISA on essentially the same theory as in this matter—that the fees charged were excessive, that lower fees could have been negotiated, and that TIAA-CREF was liable as a "party in interest" to this fiduciary breach.  Judge Pratter promptly disposed of this argument:

> [P]laintiffs seek recovery under this section of ERISA under the theory that the
> contractual arrangement with TIAA CREF and Vanguard constituted a prohibited
> transaction.  This cannot be correct.  Plaintiffs argue that paying these companies
> constitutes a . . . furnishing of services under § 1106(a)(1)(C). . . . If such an
> argument were true, then any time plan administrators contracted with another party
> to provide services to plan participants in exchange for money (which includes the
> basic elements of retirement plans, including making mutual funds available or
> recordkeeping service) it would qualify as a prohibited transaction. . . . Perhaps
> Plaintiffs attempt to balance on such an analytical tightrope because they cite no
> court that has been persuaded by such a novel argument.

*Sweda,* 2017 WL 4179752 at *11; *see also Sacerdote v. New York University*, 2017 WL 3701482, *14 (S.D.N.Y. Aug. 25, 2017) ("allegations that [a plan] violated § 406(a) by paying [a service provider] for recordkeeping services—even allegations that the plan paid too much for those services—do not, without more, state a claim"); *Cunningham v. Cornell University,* 2017 WL 4358769, at *10 (S.D.N.Y. Sept. 29, 2017) (same).

The same is true here.  Plaintiff does not allege that any plan sponsor had a prior relationship with either Defendant at the time the plan sponsors agreed to hire and pay it for its plan recordkeeping and other administrative services.  Nor does Plaintiff allege any facts from

which it could be inferred that either Defendant and any plan sponsor showed favoritism to each other or did anything other than engage in arm's-length negotiation.

### B. Plaintiff Has Not Plausibly Alleged That Any Plan Sponsor Had Knowledge Of The Facts Satisfying The Elements Of A Section 406(a)(1)(C) Transaction

The Complaint alleges "VOYA knowingly caused the Cornerstone Plan and the Plans to breach their fiduciary duties under 29 U.S.C. § 1104(a)(1) by engaging in prohibited transactions in violation of 29 U.S.C. 1106(a)."  Compl. ¶ 114.  But as discussed above, Plaintiff has not plausibly alleged that Defendants are Plan fiduciaries.  *See, e.g., Patrico,* 2017 WL 2684065, at *4 (dismissing Section 406(a)(1)(C) prohibited transaction claim against service provider where complaint failed "to allege that any ERISA Fiduciary had actual or constructive knowledge that the fees paid . . . are excessive").  Accordingly, dismissal of Counts I through III on the basis that Voya is not an ERISA fiduciary requires dismissal of Count IV as well.

Nor has Plaintiff adequately alleged that the Cornerstone Plan trustees, as the fiduciaries responsible for negotiating the Contract, had actual or constructive knowledge that the fees paid were excessive.  In this regard, to properly plead a claim for a prohibited transaction, Plaintiff must plausibly allege that the plan sponsor retained Voya with the "subjective intent to benefit a party in interest."  *Sweda,* 2017 WL 4179752, at *11 (quoting *Reich,* 57 F.3d at 279); *see also Sacerdote,* 2017 WL 3701482, *6 (dismissing claims of disloyalty because "allegations do not include facts suggesting that [plan sponsor] entered into the transaction for the purpose of (rather than merely having the effect of) benefitting [the service provider]"); *Cunningham,* 2017 WL 4358769, at *4 (same).  Plaintiff has not done so here; in fact, in her new allegations she suggests that the plan sponsor did *not* know of any excessive fees.  *See* Compl. ¶¶ 2, 101, 115.  Plaintiff also offers no plausible explanation why Cornerstone would enter into service contracts with Voya knowing Voya's compensation thereunder was excessive.  Nor does Plaintiff allege that

any such breach benefited the plan fiduciaries at the expense of plan participants or that the process of selecting the service provider was imprudent.  *White v. Chevron Corp.*, 2017 WL 2352137, at *6-18 (N.D. Cal. May 31, 2017); *see also supra* Section IV.  Instead, the Complaint contains only conclusory allegations that the Plan fiduciaries violated their fiduciary obligations.  *See* Compl. ¶ 56.  *See also, supra*, Argument IV.  Accordingly, Count IV should be dismissed.

### C. Plaintiff Has Not Plausibly Alleged That Voya Had Knowledge Of Circumstances That Rendered Its Negotiated Fee Arrangements Unlawful

*Harris Trust* also requires that the party-in-interest ("transferee") "must be demonstrated to have had actual or constructive knowledge of the circumstances that rendered the transaction unlawful."  *Harris Trust,* 530 U.S. at 251.  Although Plaintiff alleges that "[w]hen it offered asset-based recordkeeping services, VOYA knew or should have known that such charges were unreasonable," Compl. ¶ 78, such conclusory allegations "are not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 679.  Moreover, the Supreme Court has acknowledged "concern that ERISA should not be construed to require counterparties to transactions with a plan to monitor the plan for compliance with each of ERISA's intricate details," as "it may be that such concerns should inform courts' determinations of what a transferee should (or should not) be expected to know when engaging in a transaction with a fiduciary."  *Harris Trust,* 530 U.S. at 252, 253. Here, Plaintiff has failed to plausibly allege that Voya, while openly negotiating as a third-party service provider with tens of thousands of Plans, possessed the requisite knowledge that the transactions imposed excessive and unreasonable fees.

### D. Asset-Based Fees Do Not *Per Se* Violate ERISA Section 406(a)(1)(C)

Plaintiff also appears to assert that merely charging an asset-based fee amounts to a *per se* prohibited transaction for excessive and unreasonable compensation.  Compl. ¶¶ 111-113. Indeed, the Complaint offers no other basis as to why the DAC is unreasonable, positing that "[a]

reasonable fixed fee for recordkeeping would be between $35 and $64 per plan participant." *Id.* ¶ 113.   In *Sweda*, a sister court in this Circuit addressed this same claim and concluded that choosing a flat per participant fee or asset-based model is not an ERISA violation and instead is a question left to the discretion of a plan  administrator.  *Sweda,* 2017 WL 4179752, at *8.  And in this regard, the court in addressing a claim for "unnecessary fees" noted that "[t]he plaintiffs' argument that fiduciaries must maintain a myopic focus on the singular goal of lowering fees was soundly rejected in *Renfro*."  *Id.* at *9.  The Complaint here suffers from the same defect.

## VI.   Plaintiff Seeks Relief Not Available Under ERISA Section 502(a)(3)

Plaintiff's demands for "VOYA to pay restitution, disgorge or otherwise make good to the Plans all losses … resulting from the excessive fees charged," Compl., Prayer for Relief (e), do not state claims under ERISA § 502(a)(3) because the monetary relief sought is not equitable. Section 502(a)(3), the basis for all of Plaintiff's claims, authorizes suits only for certain injunctive or "other appropriate equitable relief."  Plaintiff, however, does not seek relief from any particular funds or property in Defendants' possession.  Rather, she attempts to recover from Defendants' general assets by holding Defendants liable for an amount of money equal to the excessive fees allegedly received and the losses to the Plans resulting from those fees.  *See Montanile v. Bd. of Trs. of the Nat'l Elevator Indus. Health Benefit Plan*, 136 S. Ct. 651, 657 (2016) ("Equitable remedies are, as a general rule, directed against some specific thing; they give or enforce a right to or over some particular thing … rather than a right to recover a sum of money generally out of the defendant's assets" (citation omitted)).  Because this is a *legal* remedy, each of Plaintiff's claims must be dismissed.  *Wood v. Prudential Ret. Ins. and Annuity Co.*, 2016 WL 5940946, at *5 (D. Conn. Sept. 19, 2016) (dismissing claim for disgorgement by non-fiduciary of "undisclosed, excessive, and unreasonable compensation" because it was a request for "legal relief"); *The Depot, Inc. v Caring for Montanans Inc.,* 2017 WL 3687339, at

*5 (D. Mont. Feb. 14, 2017) (dismissing claim against non-fiduciaries for restitution or disgorgement where recovery "would necessarily be from a general fund" and "equivalent to money damages"); *Urakhchin v Allianz Asset Mgmt. of America, LP,* 2016 WL 4507117, at *8 (C.D. Ca. Aug. 5, 2016) (dismissing claim for restitution or disgorgement against non-fiduciaries because plaintiffs failed to allege that the money sought "can be traced to particular funds or property in the Defendants' possession").

While the Supreme Court has recognized *in dicta* the *possibility* that a type of monetary remedy—known as a "surcharge"—might be a form of "appropriate equitable relief," it is not available here.  The Court made clear that such a remedy, even if otherwise appropriate, could only be sought against an ERISA fiduciary and then only upon a showing of actual harm and causation.  *CIGNA Corp. v. Amara,* 563 U.S. 421, 442, 444 (2011).  The surcharge remedy is not available here because, as to all Counts, Plaintiff has not plausibly alleged that either Defendant acted as a fiduciary.  The accounting sought by Plaintiff is barred for the same reason and the reasons above.  *Insinga*, 2017 WL 6884626, at *5 (dismissing claim for an accounting of profits because defendant was not a fiduciary and could not "identify the res or particular property" from which recovery was sought); *Urakhchin,* 2016 WL 4507117, at *8 (dismissing claim for an accounting of profits against non-fiduciaries because such relief is "legal rather than equitable" and the money sought was not alleged to be traceable to particular funds or property in defendants' possession).  Further, as to Count II the surcharge remedy is not available because there is no nexus between the alleged fiduciary breach (materially misleading disclosures) and the alleged harm (excessive fees).  Accordingly, each of Plaintiff's claims must be dismissed.

## CONCLUSION

For the reasons set forth above, the Amended Complaint should be dismissed.

PINCKNEY, WEIDINGER, URBAN
  & JOYCE LLC

*/s/ Patricia R. Urban*
Patricia R. Urban (#4011)
3911 Kennett Pike, Suite 210
Greenville, DE 19807
(302) 501-1526
purban@pwujlaw.com

James F. Jorden (*pro hac vice*)
Waldemar J. Pflepsen, Jr. (*pro hac vice*)
W. Glenn Merten (*pro hac vice*)
CARLTON FIELDS JORDEN BURT, P.A.
1025 Thomas Jefferson Street, NW
Suite 400 West
Washington, DC 20007
(202) 965-8100
jjorden@carltonfields.com
wpflepsen@carltonfields.com
gmerten@carltonfields.com

*Attorneys for Defendants*

Dated: February 8, 2018