IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SHARON GOETZ, on behalf of the Cornerstone Pediatric Profit Sharing Plan and as representative of a class of all other similarly situated individual account retirement plans., | ) ) ) ) ) ) | C.A. No.:  17-cv-01289 (GMS) |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| VOYA FINANCIAL, INC. AND VOYA RETIREMENT INSURANCE AND ANNUITY COMPANY, | ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Dated: March 15, 2018

**FRANKLIN D. AZAR & ASSOCIATES P.C.**
Franklin D. Azar (*pro hac vice*)
H. Zachary Balkin  (*pro hac vice*)
Paul R. Wood (*pro hac vice*)
Keith Scranton (*pro hac vice*)
Jonathan S. Parrott (*pro hac vice*)
14426 E. Evans Ave.
Aurora, CO 80014
(303) 757-3300


**SHERMAN & HOWARD L.L.C.**
Gordon W. Netzorg (*pro hac vice*)
633 17th St. Suite 3000
Denver, CO 80202
(303) 297-2900

*Attorneys for Plaintiff*

**CHIMICLES & TIKELLIS LLP**

Pamela S. Tikellis (#2172)
Robert J. Kriner, Jr. (#2546)
Vera G. Belger (#5676)
222 Delaware Avenue, Suite 1100
P.O. Box 1035
Wilmington, DE 19899
(302) 656-2500

Steven A. Schwartz (*pro hac vice*)
Chimicles & Tikellis LLP
361 West Lancaster Avenue
One Haverford Center
Haverford, PA 19041

## TABLE OF CONTENTS

**PAGE**

| | | |
|---|---|---|
| TABLE OF AUTHORITIES | | iii |
| I. | NATURE AND STAGE OF PROCEEDINGS | 1 |
| II. | SUMMARY OF THE ARGUMENT | 1 |
| III. | STATEMENT OF FACTS | 1 |
| IV. | ARGUMENT | 4 |
| A. | Standard of Review | 5 |
| B. | Plaintiff  Adequately Alleges VOYA is a Fiduciary | 5 |
| C. | Plaintiff States A Claim for Breach of Fiduciary Duty Regarding the Payment of Excessive Fees | 7 |
| D. | Plaintiff States A Claim for Relief for Providing Misleading Disclosures to Plan Participants | 10 |
| E. | Plaintiff Has Adequately Pled a Claim for Co-Fiduciary Liability | 12 |
| F. | Plaintiff States a Claim for Relief under 29 U.S.C. §1106(a) | 13 |
| i. | VOYA was a Party in Interest from 2011 Through the Date of Filing | 14 |
| ii. | Plaintiff has Adequately Alleged the Plan Sponsor and VOYA had Knowledge of the Facts | 15 |
| G. | Plaintiff Properly Brings Claims as to Both Defendants | 17 |
| H. | Plaintiff is Seeking "Appropriate Equitable Relief" for VOYA's Improper Receipt and Retention of Trust Property | 18 |
| i. | Disgorgement or Restitution are Appropriate Equitable Remedies under ERISA | 18 |

V.      CONCLUSION                                                                20

## TABLE OF AUTHORITIES

__CASE__                                                              __PAGE__

*Allen v. GreatBanc Trust Co.,*                                       9, 15
    835 F.3d 670 (7th Cir. 2016)

*Ashcroft v. Iqbal,*                                                  4, 15
    556 U.S. 662 (2009)

*Askew v. R.L. Reppert, Inc.,*                                        13
    902 F. Supp. 2d 676 (E.D. Pa. 2012)

*Atkins v. Hasan,*                                                    17
    2015 U.S. Dist. LEXIS 80176 (N.D. Ill. June 22, 2015)

*Bell Atl. Corp. v. Twombly,*                                        15
    550 U.S. 544 (2007)

*Brooks v. Ross,*                                                     17
    578 F.3d 574 (7th Cir. 2009)

*Caponegro v. United States HUD,*                                     17
    2017 U.S. Dist. LEXIS 75720 (D.N.J. 2017)

*Cannon v. MBNA Corp.,*                                               5, 12
    2007 U.S. Dist. LEXIS 48901 (D. Del. July 6, 2007)

*In re Cardinal Health, Inc. ERISA Lit.,*                             14
    424 F.Supp. 2d 1002 (S.D. Ohio 2006)

*Cunningham v. Cornell Univ.,*                                        16
    2017 WL 4358769 (S.D.N.Y. Sept. 29, 2017)

*Curcio v. John Hancock Mut. Life Ins. Co.,*                          5
    33 F.3d 226 (3d Cir. 1994)

*Danza v. Fid. Mgmt. Tr. Co.,*                                        16
    533 F. App'x 120 (3d Cir. 2013)

*Drzala v. Horizon Blue Cross Blue Shield,*                           5
    2016 U.S. Dist. LEXIS 66122 (D.N.J. May 18, 2016)

*Fish v. GreatBanc Trust Co.,*                                        15
    749 F.3d 671 (7th Cir. 2014)

*Flora v. County of Luzerne*,
    776 F.3d 169 (3d Cir. 2015) .................................................. 4

*In re Fruehauf Trailer Corp.*,
    250 B.R. 168 (D. Del. 2000) ................................................ 6

*Gedek v. Perez*,
    66 F. Supp. 3d 368 (W.D.N.Y. 2014) ................................. 5

*George v. Kraft Foods Global, Inc.*,
    641 F.3d 786 (7th Cir. 2011) ............................................... 8

*Harris Trust and Savings Bank v. Salomon Smith Barney, Inc.*,
    530 U.S. 238 (2000) .............................................. 13, 18, 19

*In re Ikon Office Solutions, Inc. Secs. Litig.*,
    86 F.Supp. 2d 481 (E.D. Pa. 2000) .................................. 5, 7

*Jump v. Speedway, LLC*,
    23 F. Supp. 3d 1024 (D. Minn. 2014) ................................. 5

*Mertens v. Hewitt Assocs.*,
    508 U.S. 248, 113 S.Ct. 2063, 124 L.E.2d 161 (1993) ..... 18

*Nat'l Sec. Sys., Inc. v. Iola*,
    700 F.3d 65 (3d Cir. 2012) ................................................ 14

*Neology, Inc. v. Kapsch Trafficcom IVHS, Inc.*,
    2014 U.S. Dist. LEXIS 131568 (D. Del. 2014) ................ 17

*Nickel v. Bank of Am. Nat. Trust & Sav. Ass'n*,
    290 F.3d 1134 (9th Cir. 2002) .......................................... 19

*Pegram v. Herdrich*,
    530 U.S. 211, 120 S. Ct. 2143, 147 L. Ed. 2d 164 (2000) ... 7

*In re Polaroid ERISA Litig.*,
    362 F. Supp. 2d 461 (S.D.N.Y. 2005) .............................. 13

*Renfro v. Unisys Corp.*,
    671 F.3d 314 (3d Cir. 2011) ............................................ 4, 6

*Sacerdote v. New York Univ.*,
    2017 WL 3701482 (S.D.N.Y. Aug. 25, 2017) .................. 16

*Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co. (U.S.A.),*     6
   768 F.3d 284 (3d Cir. 2014)

*Shaw v. Hous. Auth. of Camden,*     17
   2012 U.S. Dist. LEXIS 112694 (D.N.J. 2012)

*Terraza v. Safeway Inc.,*     9
   241 F.Supp. 3d 1057(N.D. Cal. 2017)

*Tibble v. Edison Int'l,*     8
   843 F.3d 1187 (9th Cir. 2016)

*Tussey v. ABB,*     8
   746 F.3d 327 (8th Cir. 2013)

*Unisys Corp. Retiree Med. Benefits Erisa Litig. v. Unisys Corp.,*     5
   579 F.3d 220 (3rd Cir. 2009)

*Van Loo v. Cajun Operating Co.,*     7
   64 F. Supp. 3d 1007 (E.D. Mich. 2014)

**STATUTES**

28 U.S.C. § 1002(21)(A)     5

29 U.S.C. § 1002(14)     14, 16

29 U.S.C § 1002(21)(A)     6

29 U.S.C. § 1002(34)     1

29 U.S.C. § 1002(14)(B)     3

29 U.S.C. § 1104(a)(1)     13

29 U.S.C. § 1104(a)(1)(A)(ii)     7

29 U.S.C. § 1105(a)     13

29 U.S.C. § 1105(a)(2)     12, 13

29 U.S.C. § 1106(a)     *passim*

29 U.S.C. § 1106(a)(1)(C)     3, 4, 15

29 U.S.C. § 1106(a)(3)                                          *passim*

29 U.S.C. § 1106(b)(1)                                          8

29 U.S.C § 1108(b)(2)                                           *passim*

29 U.S.C. § 1132 (a)(3)                                         *passim*

29 U.S.C. § 1132 (a)(5)                                         18


**OTHER SOURCES**

29 C.F.R. § 2550.404a-5                                         *passim*

29 C.F.R. § 2550.404(a)-5(c)(2)(ii)(C)                          10

29 C.F.R. § 2550.408c-2(a)                                      16

## I.        NATURE AND STAGE OF THE PROCEEDINGS

Defendants filed a second motion to dismiss and an Opening Brief in Support of Motion to Dismiss ("Def. Br.") on February 8, 2018.  This Brief is filed in opposition to the Motion to Dismiss.

## II.       SUMMARY OF THE ARGUMENT

1.       Whether a defendant acted as an ERISA fiduciary is a fact-intensive question not to be determined at the pleading stage.  Plaintiff adequately alleges the VOYA Defendants are ERISA fiduciaries with respect to the actions alleged in the Complaint.

2.       Plaintiff's collective allegations as to the VOYA Defendants are appropriate.

3.       Plaintiff has stated a claim for breach of fiduciary duty regarding the payment of excessive fees.

4.       Plaintiff has stated a claim for relief for VOYA providing misleading disclosures to Plan participants.

5.       Plaintiff has adequately pled a claim for co-fiduciary liability.

6.       Plaintiff states a claim for relief under 29 U.S.C. § 1106(a).

7.       Plaintiff is seeking "appropriate equitable relief" for VOYA's improper receipt and retention of trust property.

## III.      STATEMENT OF FACTS

Plaintiff Sharon Goetz ("Plaintiff") brings this action as a representative of and on behalf of the Cornerstone Plan and all other similarly situated individual account plans as defined in 29 U.S.C. §1002(34) (the "Plans"), against Defendants VOYA Financial, Inc. ("Voya Financial") and its wholly owned subsidiary VOYA Retirement and Annuity Company ("Voya Retirement")

1

(collectively "VOYA" or "Defendants")[1] ¶16.[2] The Cornerstone Plan is one of 47,000 plans for which VOYA performs similar recordkeeping and other administrative services. ¶20. VOYA markets its "plug and play" solution package to employers with small plans and limited time for or sophistication in the administration and management of retirement plans and assets and exploits their lack of sophistication to charge unreasonable and grossly disproportionate asset-based fees to the Plans. ¶¶8, 29.

VOYA is a Plan fiduciary because VOYA (1) selects and determines the investment options in the Plans and maintains the discretion to select, monitor, and change  Plan investment options;  (3) sets its own fees for services and investment options, and (3) determines the content of the fee disclosures which VOYA  prepares and distributes to Plan participants. ¶¶29-33.

VOYA charges the Plans unreasonable fees for its services. ¶¶34-45. In addition to a fixed maintenance fee, VOYA adds an exorbitant and unreasonable asset-based fee ("Daily Asset Charge") to each Fund in the Plans' investment options, including the proprietary funds for which VOYA, itself, is already compensated at market. ¶36. The Daily Asset Charge is set at VOYA's sole discretion and varies by Fund, but is never less than 0.67% and usually over 1% of the asset value. ¶37. VOYA's asset-based fees are also grossly unreasonable based on the services provided to the Plans and VOYA's alleged "mortality and expense risks, which may include profits." ¶¶38-39.

Defined contribution plan sponsors are required to make certain disclosures to plan participants under 29 CFR 2550.404a-5 ("Rule 404a-5 Disclosures") to provide sufficient

---

[1] VOYA Retirement is a wholly owned subsidiary of VOYA Financial.  ¶22. As discussed in Section G, *infra*, the VOYA entities are functionally inseparable and as such the allegations herein are made against the Voya Defendants collectively. ¶23.

[2] References to the Amended Class Action Complaint are designated as "¶ __."

information to participants regarding the Plans so they are able to make informed decisions regarding the management of their individual plan accounts. ¶¶47-48. The Plans rely on VOYA to prepare and provide accurate Rule 404a-5 Disclosures to participants. ¶¶47-48. VOYA failed to make accurate Rule 404a-5 Disclosures because it concealed the true amount of its fees and the nature of the services provided for the fees from the Cornerstone Plan participants and Plans' participants by adding VOYA's asset-based fees to the operating expenses of the various mutual fund options in the Rule 404a-5 Disclosures. ¶62. The asset-based fee increased the operating expenses of every mutual fund offered under the Cornerstone Plan by 0.67% to 1.86% of net assets. ¶62. Nowhere in the Rule 404a-5 Disclosures does VOYA disclose (1) it increased the operating expenses of every mutual fund offered under the Cornerstone Plan; and (2) the expense difference was paid to VOYA to provide recordkeeping and administrative services to the Cornerstone Plan and mitigate VOYA's supposed mortality and capital risk. ¶62.

Cornerstone Pediatric Associates, LLC, as the Cornerstone Plan fiduciary, failed to adequately perform its fiduciary obligation to (1) ensure that the Cornerstone Plan pay no more than reasonable compensation for recordkeeping services, thereby causing the Cornerstone Plan and the Plans to engage in a transaction prohibited by 29 U.S.C. § 1106(a)(1)(C); and (2) ensure VOYA's Rule 404a-5 Disclosures were accurate. ¶79. VOYA knew the Plans' Sponsors were breaching their fiduciary duties and consequently is liable to the Cornerstone Plan and the Plans for the excessive fees VOYA knowingly charged the Plans in violation of 29 U.S.C. §1106(a)(1)(C) and 29 U.S.C. §1108(b)(2) and the false and misleading Rule 404a-5 Disclosures. ¶80.

Regardless of whether VOYA is a plan fiduciary,[3] VOYA has breached its duty to charge only reasonable fees for its services. ¶¶72-80. VOYA is a "party in interest" under 29

---

[3] A premature determination at this stage of litigation.

U.S.C. §1002(14)(B) because it provides recordkeeping and other administrative services to the Cornerstone Plan and the Plans. ¶74. Sections 1106(a) and 1108(b)(2) generally prohibit a "party in interest" from providing services to a qualified retirement plan like the Plans unless the fees are "reasonable." ¶¶74-75.

VOYA's asset based fees allowed VOYA to charge ever higher fees when assets increased while providing no additional services or greater value to participants. ¶76, VOYA's asset based fee, as charged, is not "reasonable compensation" under 29 U.S.C. §1108(b)(2), and consequently is not exempt from the prohibition of 29 U.S.C. §1106(a)(1)(C). ¶76. VOYA knew or should have known that such charges were unreasonable and violated 29 U.S.C. §1108(b)(2) and 29 U.S.C. §1106(a)(1)(C). ¶78. Nonetheless, VOYA continued to charge Plans unconstrained asset based fees for recordkeeping services. ¶78.

## IV.    ARGUMENT

### A.    Standard of Review

In resolving a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6), the plaintiff's factual allegations must be taken as true, and all reasonable inferences must be drawn in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is similarly well-established that the resolution of disputed facts is inappropriate on motions to dismiss under Rule 12(b)(6). *See, e.g., Flora v. Cnty of Luzerne*, 776 F.3d 169, 175-76 (3d Cir. 2015). The Court must deny the motion to dismiss if Plaintiffs have alleged facts which, together with all reasonable inferences in plaintiffs' favor, state a plausible claim to relief. *Renfro, v. Unisys Corp.*, 671 F.3d 314, 320 (3rd Cir. 2011).

4

### B.       Plaintiff Adequately Alleges VOYA is a Fiduciary

Whether a defendant is acting as an ERISA fiduciary with respect to the actions alleged in the complaint is a fact-intensive question, and courts consistently hold that such a determination should not be determined at the pleadings stage. *See, e.g., Cannon v. MBNA Corp.*, 2007 U.S. Dist. LEXIS 48901, *7-*8 (D. Del. July 6, 2007) (Sleet, J.) ( "Several courts have held that the question of whether a party is a fiduciary is a mixed question of law and fact, and determinations on whether a party is a fiduciary generally cannot be made prior to discovery.").[4] Here, the alleged facts and reasonable inferences in Plaintiff's favor support a plausible claim that VOYA acted as a fiduciary to the Plan with respect to the claims alleged.

Under ERISA,

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). "ERISA… defines 'fiduciary' not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan.'" *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 579 F.3d 220, 228 (3d Cir. 2009) (alteration and emphasis in original)

---

[4] *Accord Drzala v. Horizon Blue Cross Blue Shield*, 2016 U.S. Dist. LEXIS 66122, *17 (D.N.J. 2016) (ERISA case finding "[a]t this stage it is not the Court's task to determine whether [the defendant] is actually an administrator or fiduciary of the Plan."); *In re Ikon Office Solutions, Inc. Secs. Litig.*, 86 F.Supp. 2d 481, 492-93 (E.D. Pa. 2000) (declining to dismiss ERISA count and holding that further factual development was required to determine if defendant employer acted as a fiduciary); *Gedek v. Perez*, 66 F. Supp. 3d 368, 383 (W.D.N.Y. 2014) (ERISA case stating "[w]hether a trustee has fiduciary status, or has acted as a fiduciary, is for the most part a fact-intensive inquiry, making the resolution of that issue inappropriate for a motion to dismiss."); *Jump v. Speedway, LLC*, 23 F. Supp. 3d 1024, 1031 (D. Minn. 2014) (ERISA case finding it would be "premature to determine a defendant's fiduciary status at the motion to dismiss stage of the proceedings, because a determination of fiduciary status based on function is a mixed question of law and fact.").

(internal citations omitted). ERISA's fiduciary definition is to be broadly construed.  *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 233 (3d Cir. 1994) (internal citations omitted).

Plaintiff alleges VOYA possessed and exercised discretion over various Plan functions, including setting Plan fees and preparing disclosures, thereby satisfying ERISA's statutory definition of a fiduciary. ¶¶29-33; *see* 28 U.S.C. §1002(21)(A); *In re Fruehauf Trailer Corp.*, 250 B.R. 168, 204-05 (D. Del. 2000) (An entity "may be a fiduciary if it exercises some discretion or control over management, assets, or administration of the plan.").[5]

First, Plaintiff alleges that VOYA acted as a fiduciary under ERISA in its exercise of discretion to monitor, determine and allocate the "reasonable" fees charged for the investment options and VOYA's services. ¶¶30, 32. Under its contract with the Cornerstone Plan, VOYA charged a Daily Asset Charge in the form of a percentage of the total Cornerstone Plan assets, for "[VOYA's] mortality and expense risks, which may include profit." VOYA also charged an additional percentage of the assets invested in specific funds as a "Daily Asset Charge Adjustment." Exhibit A to Def. Br. ("Ex. A") pp. 8-9; §4.09. VOYA had discretion to adjust the Daily Asset Charge annually and the Daily Asset Charge Adjustment "at any time." *Id.* By setting and adding the Daily Asset Charge to every Fund in the Plan's investment options, VOYA charged an exorbitant and unreasonable fee to the Plans for its services. ¶36. VOYA's discretion to determine the "reasonable" fees for the Plans' investment options is directly tied to the First and Third Claims for Relief. ¶¶ 86-90, 98-105.

---

[5] Contrary to Defendants' assertions (Def. Br. at 7), VOYA's fiduciary status is tied to Plaintiff's claims. Defendants point to *Renfro v. Unisys Corp.*, 671 F.3d 314 (3rd Cir. 2011) and *Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co. (U.S.A.)*, 768 F.3d 284 (3rd Cir. 2014) as cases where the Court found that the defendants' fiduciary status was not adequately tethered to the claims.  But these cases are readily distinguishable.  *Renfro* involved a defendant in the limited role of a directed trustee that controlled only which investments it was to administer and not which investments were included in the plan as a whole.  671 F.3d at 323.  Similarly, in *Santomenno*, unlike here, the service provider was not a fiduciary because the trustees exercised final authority over what funds were included in the investment options.  *Santomenno*, 768 F.3d at 294.

Second, Defendant VOYA acted as a fiduciary in selecting and determining the Plans' investment options. ¶¶30-31. VOYA's discretion to select investment options is inextricably tied to its further discretion to determine the "reasonable" fees for the Plan's investment options. ¶32. The discretion regarding the selection of investment options is directly tied to the First and Third Claims for Relief.  ¶¶86-90, 98-105.

Third, VOYA is a fiduciary because it had discretion to determine the contents of the Fund's 404a-5 Disclosures to Plan participants including ERISA's fee disclosures and, in fact, prepared and distributed the disclosures to Plan participants.[6] ¶33; *see In re Ikon*, 86 F. Supp. 2d 481 (finding former employer a fiduciary for ERISA purposes where employer provided misinformation to participants about the risks of investing in employer's stock). As such, VOYA was acting as a fiduciary when it concealed the unreasonable fees in the Rule 404a-5 Disclosures it prepared and sent to participants. ¶¶46-71. This conduct is directly tied to the Second and Third Claims for Relief. ¶¶ 91-105.

## C.    Plaintiff States A Claim for Breach of Fiduciary Duty Regarding the Payment of Excessive Fees

 "A fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . . defraying reasonable expenses of administering the plan . . . ." 29 U.S.C. § 1104(a)(1)(A)(ii).  Section 1104 essentially codifies the common law fiduciary duty of loyalty—the duty of a trustee to administer a trust

---

[6] Defendants argue that preparing disclosures prescribed by Rule 404a-5 is a purely ministerial function-not a fiduciary function.  (Def. Br. at 10-11). Defendants ignore Plaintiff's allegation that VOYA maintained discretion to determine the contents of ERISA disclosures to Plan participants.  ¶33.  As the Amended Complaint shows that VOYA exercised discretionary authority when making the alleged misrepresentations, Plaintiff has adequately pled VOYA acted as a fiduciary.  *Van Loo v. Cajun Operating Co.*, 64 F. Supp. 3d 1007, 1019 (E.D. Mich. 2014) (finding Defendant acted as a fiduciary where conduct of making misrepresentations to plan participant fell within discretionary authority to manage plan).

solely in the beneficiaries' interest. *See Pegram v. Herdrich*, 530 U.S. 211, 224, 120 S. Ct. 2143, 147 L. Ed. 2d 164 (2000). ERISA also prohibits a fiduciary from "deal[ing] with the assets of the plan in his own interest or for his own account." 29 U.S.C. § 1106(b)(1). This prohibition is codified in Section 2.04 of the Contract:

> No assets held under this Contract shall be used for other than the exclusive benefit of Participants and Participants' beneficiaries and for defraying the reasonable administrative expenses of the Plan, prior to the satisfaction of all contractual obligations with respect to Participants and Participants' beneficiaries.

ERISA provides "that plan administrative costs must be 'reasonable.'" *George v. Kraft Foods Global*, 641 F.3d 786, 789 (7th Cir. 2011) (citing 29 U.S.C. §1104(a)(1)). A failure to control recordkeeping fees is a breach of fiduciary duties. *Tussey v. ABB*, 746 F.3d 327, 336 (8th Cir. 2013). Paying unnecessary fees results in loss of "not only the money spent on higher fees, but also 'lost investment opportunity…'" Put simply, "[w]asting beneficiaries' money is imprudent." *Tibble v. Edison Int'l*, 843 F.3d 1187, 1197-98 (9th Cir. 2016) (*en banc*). Thus VOYA was obligated to charge the Plans reasonable fees under 29 U.S.C. § 1106(a)(3) and 29 U.S.C. § 1108(b)(2) and Section 2.04 of the Contract.

Under the Contract, VOYA had discretion to set fees for VOYA's recordkeeping services to the Plans. Section 4.09 of the contract provides:

> A Daily Asset Charge expressed as an annual rate of Account Value that will be deducted for [VOYA's] mortality and expense risks, which may include profit. . . . The Daily Asset Charge will be reviewed and may be adjusted (up or down), no more often than annually and no less often than every two Contract Years in accordance with [VOYA's] existing administrative practice to reflect changes in the Current Value of all Accounts.

Ex. A pp. 8-9; §4.09.

Despite its fiduciary and contractual obligations, VOYA charged unreasonable fees. In

8

addition to a fixed maintenance fee, VOYA charged an exorbitant and unreasonable Daily Asset Charge to each Fund in the Plans' investment options, including the VOYA proprietary funds for which, VOYA, itself, is already compensated at market for the management and expenses of the proprietary funds. ¶¶34-36. The Daily Asset Charge is set at VOYA's sole discretion and is never less than 0.67% and usually over 1% of the fund's asset value.  ¶37 VOYA also has discretion to allocate the Daily Asset Charge among the Funds, and does not merely allocate a fixed percentage across the board.  ¶32.

VOYA justifies its Daily Asset Charge by claiming it is "deducted for mortality and expense risks, which may include profit." ¶38. The only "expense" risk to VOYA is the 3% guaranteed rate on the VOYA Stable Value Fund; VOYA does not guarantee a rate of return on any other Fund. ¶¶38-39. The Daily Asset Charge is essentially a recordkeeping fee and grossly disproportionate to the services provided and the minimal risk assumed by VOYA and is unreasonable by any fair metric. ¶¶40, 45.

Defendants argue Plaintiff has not adequately alleged unreasonable fees as reasonableness "is not judged by vague, unsupported *post facto* assertions that fees could have been lower, but must be supported by factual allegations…." (Def. Br. at 8-9). Generally, whether compensation is "reasonable" depends on the particular facts and circumstances of each case. 29 CFR § 2550.408c-2(a). Plaintiff alleges the cost recordkeeping and administrative services depends on the number of participants, not the amount of assets in a plan, that recordkeeping is essentially a computerized brokerage account, and the greatest cost is upfront set-up costs. ¶¶40-44. Plaintiff alleges a reasonable cost for recordkeeping in 2015 was $64 per participant, and VOYA charged over $1,500 per participant, more than 36 times the reasonable fee. ¶5. These facts as pleaded are sufficient to show unlawful behavior. *Allen v. GreatBanc Tr.*

9

*Co.*, 835 F.3d 670, 678 (7th Cir. 2016). "[T]he Court cannot resolve this factual issue [*i.e.*, unreasonable compensation for recordkeeping] at this stage of the litigation. This is especially true because [the plaintiff] has not yet had the benefit of discovery, and therefore lacks inside information regarding the Defendants' decision-making process and the compensation actually provided to the record-keepers." *Terraza v. Safeway Inc.*, 241 F.Supp. 3d 1057, 1083-84 N.D. Cal. 2017).

**D.     Plaintiff States A Claim for Relief for Providing Misleading Disclosures to Plan Participants**

Plan sponsors are required to make certain disclosures to plan participants under Rule 404a-5.[7] 29 CFR 2550.404a-5. The purpose of the Rule 404a-5 Disclosures is to provide sufficient information to participants regarding the Plans, including fees and expenses, so they are able to make informed decisions with regard to the management of their individual plan accounts. *Id*.

Where recordkeeping services are paid for through revenue-sharing arrangements, Plan administrators need not disclose the exact amounts remitted to the record-keeper. Instead, the regulation instructs Plan administrators to provide in quarterly statements

---

[7]     Rule 404a-5(c)(2)'s requires "administrative expenses" to be disclosed:

>  (i)(A) On or before the date on which a participant or beneficiary can first direct his or her investments and at least annually thereafter, an explanation of any fees and expenses for general plan administrative services (e.g., legal, accounting, recordkeeping), which may be charged against the individual accounts of participants and beneficiaries and are not reflected in the total annual operating expenses of any designated investment alternative, as well as the basis on which such charges will be allocated (e.g., pro rata, per capita) to, or affect the balance of, each individual account.

> an explanation that . . . some of the plan's administrative expenses
> for the preceding quarter were paid from the total annual operating
> expenses of one or more of the plan's designated investment
> alternatives (e.g., through revenue sharing arrangements, Rule 12b-
> 1 fees, sub-transfer agent fees).

*Jacobs v. Verizon Communications Inc.,* Case No. 1:16-cv-1082-PGG, Slip Op. at 20 (S.D.N.Y.

Sept. 28, 2017), (Dkt. No. 70) (citing 29 C.F.R. § 2550.404a-5(c)(2)(ii)(C)).

As stated above, under its contract with the Cornerstone Plan, VOYA collected a "Daily

Asset Charge" and a "Daily Asset Charge Adjustment" fee based on the total assets invested by

the Plan. Ex. A, pp. 8-9; § 4.09. VOYA had discretion to adjust the Daily Asset Charge annually

and the Daily Asset Charge Adjustment "at any time." *Id.* However, VOYA failed to disclose

properly its fees to Plan participants in the Rule 404a-5 Disclosure. *See* Exhibit C to Def. Br.

Instead, VOYA attempted to circumvent Rule 404a-5 by adding the Daily Asset Fee and the

Daily Asset Charge Adjustments to the operating costs of the mutual funds offered as Plan

investment options.

VOYA offers a number of arguments to justify its failure to comply with Rule 404a-5.

First, VOYA claims it is not a fiduciary and thus not responsible for the content of the

disclosures. However, as stated above, VOYA acted as a fiduciary with respect to preparing and

distributing false and misleading Rule 404a-5 Disclosures. *See* Section B, *supra.* Moreover,

although plan sponsors are responsible for delivering the Rule 404a-5 Disclosures, they are

expected to rely on the services of the Plans' recordkeeper to actually prepare and deliver the

required disclosures. Here, the Plan sponsors were forced to rely on VOYA to make the Rule

404a-5 Disclosures because VOYA had the discretion to adjust the fees.

Second, VOYA argues the Daily Asset Charge does not have to be disclosed in the 404a-

5 Disclosures because the Plan participants invested in a "group annuity contract," which invests

in the underlying mutual funds and Rule 404a-5 does not require disclosure of "the portion of a

plan investment option's gross expense ratio being applied to recordkeeping." However, as stated above, this section applies to the portion of the mutual fund operating costs paid by the various mutual funds directly to VOYA as detailed in ¶69. It does not include the Daily Asset Charge and the Daily Asset Charge Adjustments, which VOYA charged to and collected directly from the Plan, and which were not being paid from the operating costs of the mutual funds.

Finally, VOYA argues the fees were disclosed in the quarterly statements. Rule 404a-5 does not allow direct fees collected from the Plan to be disclosed in the quarterly statements. Moreover, the quarterly statements contain no information regarding the operating costs of the various funds, so the information lacks context and is not useful to Plan participant.

### E.   Plaintiff Has Adequately Pled a Claim for Co-Fiduciary Liability

Plaintiff pleads VOYA's co-fiduciary liability under 29 U.S.C. § 1105(a)(2). ¶¶98-105. Pursuant to §1105(a)(2), a fiduciary can be held liable for "co-fiduciary" breach if the fiduciary enables another to commit a fiduciary breach by breaching his or her own fiduciary duties under ERISA.

First, Plaintiff adequately alleges primary breaches of fiduciary duty by the Cornerstone Plan and the Plans' Sponsors which Plaintiff alleges breached their fiduciary duties by paying VOYA excessive recordkeeping fees and distributing the false and misleading Rule 404a-5 Disclosures. ¶¶79, 103. At this stage, these allegations are sufficient. *See Cannon v. MBNA Corp.*, 2007 U.S. Dist. LEXIS 48901, *18 (D. Del. 2007) (ERISA case denying motion to dismiss allegation that defendants were liable as co-fiduciaries where plaintiffs had sufficiently pled underlying claims "since the issues surrounding those alleged primary breaches could not be resolved at the pleadings stage, dismissing the claims for co-fiduciary liability at [the motion to dismiss stage] would be premature.")

Second, as a further predicate, Plaintiff plausibly alleges that VOYA breached duties owed in its fiduciary role by charging excessive fees and preparing and distributing false and misleading Rule 404a-5 Disclosures. *See* Sections B, C and D, *supra*.

Finally, Plaintiff alleges that VOYA is liable as a co-fiduciary because "VOYA knew of and enabled the Cornerstone Plan and the Plans' Sponsors' breaches of their fiduciary duties under 29 U.S.C. §1104(a)(1) by charging excessive fees and preparing and distributing the false and misleading Rule 404a-5 Disclosures, and so it is equally liable to the Cornerstone Plan and the Plans for those breaches under 29 U.S.C. §1105(a)(2)." ¶ 105, *see also* ¶80. As this language clearly tracks the language of §405(a)(2), Plaintiff properly alleges that VOYA is liable as a co-fiduciary.[8] *In re Polaroid ERISA Litig.*, 362 F. Supp. 2d 461 (S.D.N.Y. 2005) (finding plaintiffs had adequately pled defendants' co-fiduciary liability despite the complaint not sufficiently alleging knowledge of co-fiduciary actions as the complaint closely tracked the statutory language of 29 U.S.C. §1105(a) which was sufficient at motion to dismiss stage).

### F. Plaintiff States a Claim for Relief under 29 U.S.C. § 1106(a)

Plaintiff's allegations also establish a claim for relief against VOYA as a non-fiduciary for charging an unreasonable fee under § 1132(a)(3).

In *Harris Trust and Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 242 (2000), the United States Supreme Court found 29 U.S.C. § 1106(a) "categorically bar[s] certain transactions deemed 'likely to injure the… plan,'" and specifically found that a non-fiduciary

---

[8] *Askew v. R.I. Reppert, Inc.*, 902 F. Supp. 2d 676 (E.D. Pa. 2012), which Defendants point to in arguing "the Complaint fails to plausibly allege a nexus between VOYA's alleged fiduciary misconduct and the alleged fiduciary misconduct of any plan sponsor," involved a third-party complaint in which third-party plaintiffs offered no factual averments- beyond the existence of contracts between the third party plaintiffs and defendants- to explain the actual role either third-party defendants played with respect to the Plans. *Id.* at 687. As such, the Court dismissed the claims against the third party defendants without prejudice for the third-party plaintiffs to file an amended complaint with this information.

party may be liable for participating in a transaction that violated § 1106(a):

> We reject, however, the Seventh Circuit's and Salomon's conclusion that, absent a substantive provision of ERISA expressly imposing a duty upon a nonfiduciary party in interest, the nonfiduciary party may not be held liable under [29 U.S.C.§ 1132(a)(3)], one of ERISA's remedial provisions. Petitioners contend, and we agree, that [§ 1132(a)(3)] itself imposes certain duties, and therefore that liability under that provision does not depend on whether ERISA's substantive provisions impose a specific duty on the party being sued.

*Id.* at 245. Thus, Plaintiff, as a plan participant, may sue a non-fiduciary party for equitable relief.[9]

In *Nat'l Sec. Sys., Inc. v. Iola,* 700 F.3d 65, 101 (3d Cir. 2012), the court considered whether a non-fiduciary who knowingly participated in a transaction prohibited by 29 U.S.C. § 1106 could be sued under § 1132(a)(3). The court held that a third-party who accepted what he knew to be commissions obtained in breach of 29 U.S.C. § 1106(a)(3) should, based on equitable principles, be held accountable for the commissions he knowingly received by way of the fiduciary's breach of its duty. *Id.*

### i.  VOYA was a Party in Interest from 2011 Through the Date of Filing

VOYA first claims it was not a "party in interest" under 29 U.S.C. § 1002(14) when the VOYA contract was signed on November 20, 2003. *See* Ex. A at p. 4. However, VOYA has been providing administrative and recordkeeping services to the Cornerstone Plan since November, 2003 and is thus a party in interest with respect to any actions it took since entering into the contact. Specifically, the amount of fees charged by VOYA has changed since 2003.

The contract states the Daily Asset Charge will be 0.70%, but includes a list of funds

---

[9] *See also In re Cardinal Health*, *Inc. ERISA Lit*., 424 F. Supp. 2d 1002, 1023-24 (S.D. Ohio 2006) ("As an alternative to fiduciary liability, a non-fiduciary may be liable as a 'party in interest,' but only for 'appropriate equitable relief,' including injunctions and equitable restitution, in civil actions brought by plan participants under 29 U.S.C. § 1132(a)(3).").

subject to a "Daily Asset Charge Adjustment" which according to the contract are "subject to change at any time" at VOYA's discretion. Ex. A at pp. 8-9. VOYA has increased the Daily Asset Charge on the funds since 2003. For example, under the contract, the Oppenheimer Class A funds would be subject to a daily asset based charge of 0.70% plus an a Daily Asset Charge Adjustment of 0.30% for a total asset charge of 1.00%. Ex. A, pp. 8-9. However, as Plaintiff alleges, the Daily Asset Charge for the Oppenheimer funds is 1.63%. ¶61. Thus, at a minimum, VOYA has raised the Daily Asset Charge at least 0.45% over the initial contract amount. VOYA was a party in interest when that increase occurred because it was providing recordkeeping services to the Cornerstone Plan. 29 U.S.C. § 1002(14).

Once Plaintiff alleges facts establishing a violation of § 1106(a)(3), the burden of proof shifts to VOYA to prove the transaction was exempt under § 1108(b)(2) by showing the fees charged were "no more than reasonable compensation." *Allen v. GreatBanc Trust Co.* 835 F.3d 670, 676 (7th Cir. 2016) ("More fundamentally, an ERISA plaintiff need not plead the absence of exemptions to prohibited transactions. It is the defendant who bears the burden of proving a section [1108] exemption"); *Fish v. GreatBanc Trust Co.*, 749 F.3d 671, 685 (7th Cir. 2014) ("[T]he burden of proof is on a defendant to show that a transaction that is otherwise prohibited under § 1106 qualifies for an exemption under § 1108."). Generally, whether compensation is "reasonable" under sections 408 (b)(2) and (c)(2) of the Act depends on the particular facts and circumstances of each case. 29 CFR § 2550.408c-2(a).

### ii. Plaintiff has Adequately Alleged the Plan Sponsor and VOYA had Knowledge of the Facts

When considering a motion to dismiss, the court must determine if the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial

15

plausibility when the Plaintiff pleads factual content [, which is assumed to be true,] that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The allegations in ¶¶114-116, taken as true and afforded their logical inferences, establish a claim for relief against VOYA under 29 U.S.C. §§ 1132(a)(3) and 1106(a)(1)(C). Moreover, the Cornerstone Plan sponsors are deemed to have knowledge of the content of Exhibit A to Def. Br., which, as explained above, gives VOYA discretion to unilaterally establish and change its recordkeeping and other fees.

VOYA cites *Danza v. Fid. Mgmt. Tr. Co*., 533 F. App'x 120, 126 (3d Cir. 2013) in order to argue it is not a party in interest. However, *Danza* dealt with charging individual plan participants a negotiated fixed fee for processing a domestic relations order.[10] As the court stated, Section 406(b) did not apply because "Fidelity, at the time it collected the [domestic relations order] fee, had no actual control or discretion over the transaction at issue—the price of the previously bargained-for fees." *Id*. The Court concluded "a service provider cannot be held liable for merely accepting previously bargained-for fixed compensation that was not prohibited at the time of the bargain." *Id*.  This case is different. Per its contract, VOYA had discretion to reset the recordkeeping and other administrative fees annually and reset the Daily Asset Charge "at any time." Moreover, as shown by VOYA's own contract and the exhibits attached to its Motion to Dismiss, VOYA raised the fees after the contract was signed in 2003.

---

[10] Other cases cited by VOYA are also inapposite. *Sacerdote v. New York Univ.*, 2017 WL 3701482 (S.D.N.Y. Aug. 25, 2017) and *Cunningham v. Cornell Univ.*, 2017 WL 4358769 (S.D.N.Y. Sept. 29, 2017) dealt with revenue sharing payments or other fee payments drawn from mutual funds' assets and paid to the recordkeepers, not "transactions" involving plan assets. Here, the payments in question were not made to VOYA by the mutual funds, but were collected directly from the Plan by VOYA through the separate account to cover its unreasonable fees.

Finally, Plaintiff does not allege asset based fees are per-se unreasonable. However, ERISA prohibits charging "unreasonable" fees for administrative services, whether or not the fees are asset based. Plaintiff clearly alleges in ¶5 VOYA charged "unreasonable" fees. The allegations of the Amended Complaint, if taken as true, state a claim for relief against VOYA under 29 U.S.C § 1106(a)(3).

### G.     Plaintiff Properly Brings Claims as to Both Defendants

VOYA argues this case should be dismissed due to improper collective pleading.  (Def. Br. at 5).  This argument fails because VOYA Financial and VOYA Retirement are functionally inseparable. ¶23. VOYA Financial, the parent company of VOYA Retirement, owns, controls and operates VOYA Retirement; VOYA Financial's advertising to the public does not differentiate between itself and its wholly owned subsidiary; VOYA Financial holds VOYA Retirement out to the public as a "business segment," rather than a separate legal entity, and advertises under the banner of "Our Culture: One VOYA." ¶23.

Moreover, Plaintiff's collective allegations as to the VOYA entities are appropriate as they are made as to all Defendants. It is clear from the allegations that, where the term "Defendants" is used, it means all Defendants. *See Atkins v. Hasan*, 2015 U.S. Dist. LEXIS 80176, at *13 (N.D. Ill. June 22, 2015) ("the term "the Defendants" mean just that: the defendants—all of them"). Therefore, Defendants have adequate notice of the basis for the claim against them. *See Brooks v. Ross*, 578 F.3d 574, 582 (7th Cir. 2009) (noting that collective pleading is permissible where it is clear that the plaintiff is directing its allegations "at all of the defendants"). The cases VOYA cites are inapposite as, in each case, plaintiffs intended to

distinguish conduct of one defendant from conduct of another defendant, but failed to do so.[11]

Here, in contrast, Plaintiff pled and intended to plead conduct as to both Defendants.

### H.    Plaintiff is Seeking "Appropriate Equitable Relief" for VOYA's Improper Receipt and Retention of Trust Property.

#### i.    Disgorgement or Restitution are Appropriate Equitable Remedies under ERISA

Plaintiff seeks equitable relief in the form of the return of Plan assets paid as excessive recordkeeping fees to VOYA when VOYA knew or should have known its fees were unreasonable. Under these facts, disgorgement is an appropriate equitable remedy under 29 U.S.C. § 1132(a)(3).

The U.S. Supreme Court has recognized the return of plan property through restitution or disgorgement is an equitable remedy. In *Mertens v. Hewitt Associates*, 508 U.S. 248, 262 (1993), the Supreme Court stated that "even in its more limited sense, the 'equitable relief' awardable under [§ 1132(a)(5)[12]] includes restitution of ill-gotten plan assets or profits [.]" Moreover, professional service providers "must disgorge assets and profits obtained through participation as parties-in-interest in transactions prohibited by [§ 1106]."

In *Harris Trust*, 530 U.S. at 243, participants complained of a bad investment made at Salomon's behest, and sought "rescission of the transaction, restitution from Salomon of the

---

[11] *See Neology, Inc. v. Kapsch Trafficcom IVHS, Inc.*, 2014 U.S. Dist. LEXIS 131568, *11 (D. Del. 2014) (patent infringement case in which discussion of alleged indirect infringement made only blanket reference to all "Defendants" when several corporate entities were alleged to have acted in different roles); *Caponegro v. United States HUD,* 2017 U.S. Dist. LEXIS 75720, *8 (D.N.J. 2017) (due to ambiguous references in the complaint, it was "not always possible to confidently infer against which of the defendants an allegation [was] directed" before analyzing each allegation); *Shaw v. Hous. Auth. of Camden,* 2012 U.S. Dist. LEXIS 112694, *4 (D.N.J. 2012) (complaint "failed to mention several defendants individually in any of the allegations" although conduct alleged was not alleged as to all defendants).

[12] The remedies available under § 1132(a)(5) are identical to the remedies available under § 1132(a)(3), but § 1132(a)(5) authorizes an action by the "Secretary" rather than a plan participant.

purchase price with interest, and disgorgement of Salomon's profits made from use of the plan assets transferred to it." The Supreme Court held that if a third party obtains trust property, "[t]he trustee or beneficiaries may then maintain an action for restitution of the property (if not already disposed of) or **disgorgement of proceeds (if already disposed of), and disgorgement of the third person's profits derived therefrom.**" *Harris* applied long-standing trust principles to ERISA to permit plan beneficiaries to pursue third parties for disgorgement:

> [I]t has long been settled that when a trustee in breach of his fiduciary duty to the beneficiaries transfers trust property to a third person, **the third person takes the property subject to the trust, unless he purchased the property for value and without notice of the fiduciary's breach of duty**. The trustee or beneficiaries may then maintain an action for restitution of the property (if not already disposed of) or disgorgement of proceeds (if already disposed of), and disgorgement of the third person's profits derived therefrom." *Id*. at 250 (emphasis added).

The Court concluded the "common law of trusts . . . plainly countenances the sort of relief sought by petitioners against Salomon here," *Id*. at 250. Absent the availability of such relief, the ERISA enforcement provision would be meaningless because plan beneficiaries could not recover from third parties who knowingly obtained plan property in violation of ERISA.

Here, Plaintiff alleges VOYA obtained trust property directly from the Cornerstone Plan when the Cornerstone Plan paid VOYA's unreasonable fees, and that VOYA knew or should have known its fees were unreasonable. Under the facts pled, the Cornerstone Plan and other class members are entitled to compel VOYA to return the plans' property.

VOYA claims Plaintiff is seeking to recover money from VOYA's general assets rather than an identifiable fund or asset held by VOYA. This is incorrect. VOYA claims Plaintiff must identify a specific fund or trace specific funds or property to be entitled to equitable relief. This is also incorrect. The trust property was deposited in a VOYA account where it was commingled

with VOYA's other funds, rather than in a separate identifiable account. The Supreme Court has made clear, equity does not require "tracing" to specific funds or property. *See, e.g. Harris Trust,* 530 U.S. at 250. In *Nickel v. Bank of America Nat. Trust and Sav. Ass'n*, 290 F.3d 1134, 1138 (9th Cir. 2002), the court addressed the issue of commingling funds in deciding whether plaintiff was required to trace the funds related to bank overcharges to be entitled to disgorgement: "Money is fungible. Once in the bank's accounts as belonging to the bank, the specific sums taken from the trusts could never be identified again. A requirement of traceability nullifies the bank tortfeasor's obligation to cough up the profits it has made by the use of what it has wrongfully taken."

This dilemma is identical to the one before this Court. Once the Cornerstone Plan paid funds to VOYA and the funds were deposited into VOYA's general account, it became impossible for Plaintiff to trace the specific funds. Requiring a strict tracing requirement would permit VOYA to defeat the equitable nature of the claims, which seek to return trust property to the Plan, merely by transferring the funds between various VOYA accounts so they could not be specifically traced. To require Plaintiff to trace specific funds under these facts would allow VOYA to violate ERISA with impunity.

## V.    CONCLUSION

In accordance with the foregoing, Plaintiff submits that the Motion to Dismiss should be denied in all respects.

Dated: March 15, 2018                    **CHIMICLES & TIKELLIS LLP**

*/s/ Pamela S. Tikellis*
Pamela S. Tikellis (#2172)
Robert J. Kriner, Jr. (#2546)
Vera G. Belger (#5676)

20

222 Delaware Avenue, Suite 1100
P.O. Box 1035
Wilmington, DE 19899
(302) 656-2500

Steven A. Schwartz (admitted *pro hac vice*)
Chimicles & Tikellis LLP
361 West Lancaster Avenue
One Haverford Center
Haverford, PA 19041

**FRANKLIN D. AZAR & ASSOCIATES P.C.**
Franklin D. Azar (admitted *pro hac vice*)
H. Zachary Balkin (admitted *pro hac vice*)
Paul R. Wood (admitted *pro hac vice*)
Keith Scranton (admitted *pro hac vice*)
14426 E. Evans Ave.
Aurora, CO 80014
(303) 757-3300

**SHERMAN & HOWARD L.L.C.**
Gordon W. Netzorg (admitted *pro hac vice*)
633 17th St. Suite 3000
Denver, CO 80202
(303) 297-2900

*Attorneys for Plaintiff*

21